# THE UNITED STATES OF AMERICA, TO THE USE OF THE VERMONT MARBLE COMPANY,

*v.*

# BURGDORF.

BONDS; PUBLIC WORKS; ACT OF AUGUST 13, 1894.

1. The act of Congress of August 3, 1894 (28 Stat. 278), providing that every contractor with the United States for the erection of any public building or work, shall execute a bond with sureties, conditioned upon the prompt payment of all persons supplying him with labor and material in the prosecution of the work provided for in his contract, is to be liberally construed in favor of those persons who furnish such labor and materials.
2. The liability of the sureties on such bonds is to be governed by the same liberal rule of construction that applies in the assertion of ordinary mechanics' liens, rather than by the rule which applies in the case of special private bonds and commercial guaranties, which entitle sureties to have their obligations interpreted with great strictness.
3. One who has furnished labor and material to a contractor for a public building who has given such a bond, is entitled to recover the balance due him in a suit on the bond against the contractor and his sureties, even though the plaintiff's contract was with the contractor and a third person who was associated with the contractor in the doing of the work and who was jointly and severally liable with the contractor to the plaintiff, but who was not a party to the contract with the Government.

No. 840. Submitted November 10, 1898. Decided December 8, 1898.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the court in an action on a bond. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an action in the name of the United States for the use of the Vermont Marble Company, appellant, against William W. Winfree, principal, and Augustus Burgdorf and

George A. Shehan, sureties, on a bond given to secure the performance of a contract with the Government.

The declaration alleges that William W. Winfree, "acting under the style of W. W. Winfree," entered into a contract with the United States for the erection of an "Amusement Hall" at the United States Soldiers' Home, in the District of Columbia, on August 15, 1895. That on the same day said Winfree, as principal, with Burgdorf and Shehan aforesaid, as sureties, executed and delivered their bond to the United States for the sum of $25,000, subject to the following condition:

"That whereas the above-bounden W. W. Winfree has, on the fifteenth day of August, one thousand eight hundred and ninety-five, entered into a contract with Richard C. Parker, Captain United States Army, for the construction of a building denominated an Amusement Hall, at the United States Soldiers' Home: Now, therefore, if the above-bounden W. W. Winfree, his heirs, executors, and administrators, shall and will in all respects duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by the said contract agreed and covenanted by the said W. W. Winfree to be observed and performed, and according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, and make full payments to all persons supplying him labor or materials in the prosecution of the work provided for in said contract, then the above obligation shall be void and of no effect; otherwise to remain in full force and virtue."

That the said William W. Winfree, "acting as W. W. Winfree," has not performed all of the undertakings of said bond in this, that he has not made full payments to the Vermont Marble Company of the sum of $7,835, due to it for "materials supplied to said William W. Winfree, acting as W. W. Winfree, and used in the prosecution of the work

contemplated by said contract." A bill of particulars is attached showing charges in the aggregate sum of $35,035, with credits amounting to $27,200, leaving a balance as aforesaid.

The bond was given and the suit thereon instituted in accordance with the provisions of the following act of Congress, approved August 13, 1894 (28 Statutes, p. 278):

"An act for the protection of persons furnishing materials and labor for the construction of public works.

"*Be it enacted, etc.,* That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the Department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution: *Provided,* That such action and its prosecutions shall involve the United States in no expense.

"Sec. 2. Provided that in such case the court in which such action is brought is authorized to require proper security for costs in case judgment is for the defendant."

Demurrers to the declaration were overruled, and the defendants, Burgdorf and Shehan, filed six pleas, five of which, denying indebtedness by Winfree, the furnishing of material by the plaintiff, and performance, payment, and so forth, need not be further stated. Issue was joined on these, but the fourth plea, averring that the materials were furnished to other persons than the said defendant Winfree, under a contract between the plaintiff and said persons, and not between the plaintiff and the defendant Winfree, was demurred to. This demurrer was overruled, without exception reserved, and issue was joined on that plea also.

On the trial the plaintiffs read the contract between the United States and Winfree providing for the construction of the building for the sum of $64,000. It contained, among others, the usual covenant against the transfer of the contract or any interest in it by the contractor, and had been duly executed by the respective parties. The bond was then read. It is in the ordinary form for the penal sum of $25,000, and contains the condition as stated in the declaration above.

The plaintiff next read in evidence the following contract:

"This agreement made and entered into at Washington, D. C., this twenty-third day of August, 1895, by and between the Vermont Marble Company, a corporation existing under the laws of New York, and doing business at Proctor, Vermont, party of the first part, and Messrs. W. W. Winfree and George C. Esher, of Washington, D. C., party of the second part.

"Witnesseth: That the party of the first part promise and agree to furnish, set and finish complete, the exterior marble work required for Amusement Hall, a building to be erected on the U. S. Soldiers' Home grounds, in said Washington, in accordance with drawings and specifications by Claude J. Allen, architect, and Major Richard C. Parker, secretary and treasurer of said Home. The exterior of basement of said building, from grade line up to and in-

cluding water table, is to be constructed of blue marble, and the superstructure, including porch and steps, is to be of Sutherland Falls marble to compare favorably with two samples submitted to the said Major Parker for this work. It is further promised and agreed that the marble required for the main walls of the said building proper, shall be in readiness to receive the roof on or before February first, 1896, and the entire marble work, including that in porch, steps and chimneys, shall be set and finished complete on or before April first, next following.

"And for and in consideration of a faithful performance of the foregoing agreement, the party of the second part jointly and severally agree to promptly furnish all necessary drawings, prepare all foundations, to keep walls well laid up to the marble, and to provide for a free and convenient use of grounds and buildings necessary to facilitate the work of the said party of the first part, and further to well and fully pay the said party of the first part the sum of thirty-five thousand dollars ($35,000) as follows, to wit: A payment shall be made in each month equal to ninety per cent. of the full value of all marble placed in said building until the final completion of said marble work, when the balance of the first-mentioned sum or any sum being due shall be paid.

|  |  |  |
|---|---|---|
| (Signed) | "VERMONT MARBLE Co., | [SEAL] |
|  | "By JNO. A. SANFORD, *Ag't.* |  |
| (Signed) | "W. W. WINFREE, AND | [SEAL] |
| (Signed) | "G. C. ESHER. | [SEAL] |

"Witness:"

Defendant's objections to the admissibility of this contract, "because of its variance from the pleadings and bill of particulars, because it was not a contract for which the bond was conditioned, and because irrelevant and immaterial," were overruled.

The plaintiff then offered further evidence tending to show that it had fully performed its agreement aforesaid,

and in doing so had delivered the material at the place of construction. That the material was set in the said building in accordance with the specifications of the contract, by one Robertson, for the plaintiff. That the building had been fully completed according to the contract, accepted by the United States, and the contract price paid to Winfree.

It was also proved that the charge on the books of the plaintiff, from which the bill of particulars had been copied, was in the name and style of "Winfree and Esher, Washington, D. C.;" that Winfree and Esher had paid the plaintiff at various times the sums of money credited on the books and in the bill of particulars on account of said contract, and that there was due under the agreement, at the date of the suit, the sum of $7,800; that the said payments were made in part by bank checks, some of which were signed "W. W. Winfree and G. C. Esher," and that said checks had been endorsed by plaintiff's treasurer and credited to the account of "Winfree and Esher," and receipts given in said names.

Upon the conclusion of the plaintiff's evidence, the court, on defendants' motion, directed the jury to return a verdict for them, and from judgment thereon the plaintiff has appealed.

*Messrs. Needham & Cotton* for the appellant:

1. The statute is a lien law. Liens do not attach to public buildings in favor of mechanics and material-men unless permitted by statute. Am. & Eng. Encyc. of L., Vol. 15, p. 29; *Pipe Co.* v. *Bullock,* 38 F. R. 565; *Wilkinson* v. *Hoffman,* 21 N. W. R. 816. The mechanics' lien law of the District of Columbia does not in express terms or by implication permit a lien upon public works. 28 Stat. 64.

2. The doctrine upon which the underlying principles of mechanics' liens is founded is upon the consideration of natural justice, that the party who has enhanced the value

of the property by incorporating therein his labor or materials' shall have a preferred claim on said property for the value of such labor or materials. And the owner thus benefited holds his property subject to and liable for this equitable claim which grows out of and depends upon this enhanced value of his interest. *Mochon* v. *Sullivan,* 1 Mont. 470 ; *Winder* v. *Caldwell,* 14 How. 442; *Davis* v. *Alvord,* 94 U. S. 545.

3. Statutes to secure payment for labor and materials are construed liberally to accomplish their purpose. *Davis* v. *Alvord, supra; Mining Co.* v. *Cullins,* 104 U.,S. 176; *Lumber Co* v. *Russell,* 34 N. W. 104.

Sometimes the meaning of the legislature in a statute may extend beyond the precise words used in the law from the reason or motive upon which the legislature proceeded from the end in view or the purpose designed. *U. S.* v. *Freeman,* 3 How. 556; *Bell* v. *New York,* 105 N. Y. 139; *Bullock* v. *Horn,* 24 Ohio St. 420; *Tuttle* v. *Montford,* 7 Cal. 358; *Barnes* v. *Thompson,* 2 Swan. (Tenn.) 313; *People* v. *Insurance Co.,* 15 J. R. 358; Sedgwick, Stat. Cons. 308.

Courts ought to give this act all the liberal interpretation which they give to lien statutes. To close our eyes to the end in view, and construe the statute and bond with the same strictness as ordinary bonds, would be to shut out the purposes of the statute and place the case in a different condition from that intended and thus frustrate the clear purpose of the statute. The construction contended for by the defendants does not sufficiently emphasize this vital point of the statute. It is not that the labor and materials were furnished the contractor, but rather that they were used under his contract in a public work. Our adversaries' contention subordinates the essential condition of the obligation of the sureties. The security is given because the laborer and material-man has brought about the erection of the structure; the equity is in that they have created a fund, and this is the essential ground of all lien statutes, the very

essence of their being. Whatever construction destroys this equity destroys their utility.

The title of the act in question is "An act for the protection of persons furnishing material and labor for the construction of public works." The words of the statute are, "With the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract;" and the intention of the statute is to care for persons furnishing labor or materials used in the prosecution of the work. The protection extends only to such labor and materials; that is, labor and materials which enable the contractor to erect the work. The obligation of the bond is measured by the labor and materials used in the work.

4. Some light as to the policy of Congress in this act and how far it extends the protection of liens for labor and materials, may be had by an examination of what Congress has enacted in reference to lien laws for the District of Columbia. See *Monroe* v. *Hannan,* 7 Mackey, 197. The history of these enactments is found on pages 202–204, Id. By these it will be found that, under the act of 1870, the word "subcontractor" was first introduced in our law, and it is said on page 203 that the act of 1884, Chapter 143, *supra,* first gave a lien to subcontractors. The decision in the case of *Monroe* v. *Hannan,* in giving construction to the language and scope of the lien law of the District, clearly prevents the unhappy consequences of the construction of this statute claimed and so fully enlarged upon by counsel for the defendants. See, also, *Spaulding* v. *Dodge,* 6 Mackey, 289.

There is nothing in the contract between Winfree and the United States that prohibited subletting so long as there was no attempt at assigning the contract or any interest therein. The plaintiff is in legal effect a subcontractor. Within the decisions of the Court of Appeals cited, the Ver-

mont Marble Company is a subcontractor in the first degree; that is, having immediate contractual relations with the builder or principal contractor. In a majority of the States the subcontractor and material-men are given a lien directly upon the land and buildings. *Miller* v. *Whitelaw,* 28 Mo. App. 639; All persons are considered subcontractors except those who have contracts directly with the owner or his agent, and they are given mechanics' liens like other contractors by statute in most of the States. Am. & Eng. Encyc. of L., Vol. 15, page 47.

In *Leitch* v. *Emergency Hospital,* 6 App. D. C. 247, it was held that, "the material-men intended to be protected by the mechanics' law of 1884 are those only who occupy the position of contractor or subcontractor, and who furnish materials under contract with the owner or principal contractor." This case was affirmed by *Herrell* v. *Donovan,* 7 App. D. C. 322. The Vermont Marble Company was in fact a subcontractor under a contract directly referring to the contract between the United States and Winfree.

5. It is claimed in defense that sureties have a right to stand on the strict letter of their contract; that it is no concern of theirs what the results of such strict construction may be; that they receive no benefit for their agreement; and numerous authorities are cited in which these or like expressions are used. The fault of such quotation in this case is the common one of missapplication. It overlooks the fact that there are well-settled rules of construction of contracts, and when these are found they are the true rules for the guidance of the court. Brandt on Suretyship, Sec. 78; *Reed* v. *Bowman,* 2 Wall. 591. The law throws no peculiar wall of defense around a surety. When he has made a lawful contract his obligations are to be determined by the same rules of construction as that of any other lawful contract. *Ford* v. *Beech,* 11 Q. B. 866. Great regard must be given to the objects which the writing was to accomplish. 11 Am. & Eng. Encyc. of L., 512; *Railway Co.* v. *Brydon,* 65 Md. 198.

Regard must be given to the occasion which gave rise to the relative position of the parties and their obvious designs as to the object to be accomplished. The whole writing should be considered in determining the meaning of any or all of its parts. Where reference is made to another paper and it is clear that that paper was considered by them at the time of contracting and was the inducement for that act, that paper will become a part of the contract. The contract of Winfree and the United States is mentioned in the bond. The court must consider that these sureties contracted with reference to that contract.

6. " Winfree and Esher " may be considered an instrumentality of Winfree in obtaining for Winfree the labor and materials used in the construction of the Amusement Hall. Winfree could not legally assign an interest in his contract. He could employ any agency he saw fit to assist him in its performance. Authorities sustaining this principle need not be cited. But see Brandt on Suretyship, Sec. 100; *Kuhm* v. *Abat,* 14 Martin (La.): 2 N. S. 168.

7. Change in the personality of the contractor, as by adding another as a partner, or by the dissolution of a firm, whatever its effect in ordinary contracts of suretyship, is no defense in respect to a lien law bond. So long as the labor or materials are necessary for the execution of the builders'· contract, are actually furnished and incorporated in the building, and are furnished by one in contractual relations only one remove by the contractor, the furnisher comes within the protection of the reason of· the law and the decided cases. *Kaufmann* v. *Cooper,* 65 N. W. R. 796; *Sapp* v. *McCann,* 47 Minn. 364; *Freeman* v. *Berkey,* 45 Minn. 438; *Van Horn* v. *Van Dyke,* 70 N. W. (Wis.) 1067; *Willer* v. *Bergenthal,* 50 Wis. 474; *Weston* v. *Olsen,* 55 Wis. 613; *Huse* v. *Washburn,* 59 Wis. 414; |*Bentley* v. *Davidson,* 74 Wis. 420.

Had the present case related to other than a public building, it would have been on all fours with that of *Van Horn* v. *Van Dyke, supra*; See, also, *Ogden* v. *Alexander,* 140 N. Y. 356.

*Mr. J. J. Darlington, Mr. Calderon Carlisle,* and *Mr. Wm. G. Johnson* for the appellees:

1. There is a plain variance between the allegations of the declaration and the evidence offered in support thereof.

The evidence shows that the materials, the value of which is sought to be recovered in this action, were furnished not to Winfree, as alleged in the declaration, but to him and another under a contract in which Winfree and that other jointly and severally promised to pay for the same. If this were an action on the contract and it were declared upon in the terms used in the declaration in the case at bar, the objection of variance would be fatal, and the rule is no different where the action arises upon some collateral matter and the contract described is material to the issue. 1 Chitty Pleading, 1 Am. Ed. 307; *Sheehy* v. *Mandeville,* 7 Cr. 208; *Tilley* v. *County of Cook,* 103 U. S. 155.

The appellant was not taken by surprise by this objection. The pleas of the defendants gave notice to appellant that they made this variance a matter of specific defense, and, though the fourth plea was demurred to and the demurrer overruled, no amendment was made of the declaration, nor was leave asked at the trial to amend, appellant insisting upon standing upon its case as alleged. Under the circumstances, the contract should not have been received in evidence, and as there was no other proof, the appellees were entitled to a verdict, and the judgment should be affirmed for that reason alone.

2. The condition of the bond upon which the action is brought does not extend to contracts for work and materials other than those with the principal in the bond. Even if the admission in evidence of the contract with Winfree and Esher could be justified, under the pleadings, that contract could not support a recovery by the appellant against these appellees. Their relation to this matter is that of surety alone; they are not parties to the contract, and had no bene-

ficial interest therein.   Under such circumstances their lia-
bility is to be strictly limited to the express stipulations of
their contract of suretyship.    *Miller* v. *Stewart*, 9 Wheat. 680.

Both the statute and the bond are confined to cases of
persons supplying the principal in the bond, and neither at-
tempts to extend the benefit to cases of material or labor
supplied to any one else.    In this case the labor and material
were not furnished to the principal nor made subject to his
control, but a stranger to the contract of the sureties, one
Esher, was introduced, and equal rights with Winfree were
given to him.   This at once placed in control of the con-
tract one for whose acts the sureties had never agreed to be
bound, and gave him a dominion, authority and influence
over the one for whom they were bound, not in any sense
contemplated in the contract of suretyship.   It can not be
said that the contract of Winfree and Esher with appellant,
being joint and several, and therefore the separate contract
of each and the joint contract of both, is in any sense the
sole contract of Winfree.

The following authorities are in point as showing the
strict construction courts have uniformly placed upon con-
tracts of guaranty when it has been attempted to extend
such contracts for the benefit of persons not plainly included
in their terms: *Russell* v. *Perkins,* 1 Mason, 368; *Grant* v.
*Naylor,* 4 Cr. 224; *Machine Co.* v. *Brock,* 113 Mass. 195;
Brandt, Suretyship and Guaranty, Sec. 98; DeColyar, Guar-
anties and Surety (Am. Ed.), 297.    *Bell* v. *Bruen,* 1 How.
169, makes it clear that bonds must be even more strictly
construed in favor of the sureties than commercial guaran-
ties.    See, also, *United States* v. *Boecker,* 21 Wall. 652.

3. While lien laws are unquestionably remedial in that
they furnish a remedy to those who were before without such
remedy, yet at the same time they are in derogation of the
common law and of common right.    It is submitted that
the rule followed in construing these laws has been to con-
strue them liberally only in so far as they give a remedy in

favor of mechanics, etc., without unduly infringing upon the rights of owners, and where a liberal construction would impose onerous, impractical or absurd conditions courts have uniformly construed them strictly. The lien law of this District furnishes a clear and familiar example of statutes of the latter class. *Leitch* v. *Hospital*, 6 App. D. C. 247; *Monroe* v. *Hannan*, 7 Mackey, 167; *Herrell* v. *Donovan*, 7 App. D. C. 322. See, also, *Greenough* v. *Nichols*, 30 Vt. 768; *Parker* v. *Anthony*, 4 Gray, 289; *Ayres* v. *Revere*, 1 Dutch. (N. J.) 474. Phillips' Mech. Liens, Secs. 16, 18.

But it is to be observed that this is not a proceeding to subject the *res* upon and in which the labor and materials have been placed to the payment therefor, nor to require the owner of that *res* to compensate those who have contributed to its increased value by their labor and improvements. On the contrary, it is a proceeding to enforce the liability of suretyship, pure and simple. The appellees are not the owners of the building improved, nor the contractor engaged to improve the same, and they have no interest in or connection with the contract for its construction. Their contract is simply to pay all persons supplying Winfree with materials, and they are here sought to be charged by persons supplying Esher.

Mr. Justice SHEPARD delivered the opinion of the Court:

Whether founded in a superior natural equity or not, the claims of those who furnish labor and materials in the construction of buildings for private owners have for very many years been regarded with special favor by legislatures.

The evils resulting from the failures, and sometimes frauds, of contractors and owners were considered so serious and wide-reaching as to require remedy upon considerations of sound public policy; and statutes conferring special rights of lien upon the improved property were generally enacted by the States of the Union, and have been continued in force, with a tendency rather towards the extension of

their scope.   Congress, long since, adopted the same general policy in its legislation for the District of Columbia.

This idea of public policy, however, was not stretched to the extent of giving such liens upon public buildings; other important considerations stood in the way.   The evils, therefore, that were in part remedied through legislation in respect of private building contracts, remained and increased in proportion with the enormous public works in which the United States are constantly engaged, until the statute hereinabove recited was enacted with the intent to meet and mitigate them.

The obligation of this statute falls directly upon the person to whom a contract shall have been awarded, as a condition precedent to his entry upon its performance.   It commands him to execute a bond with sufficient sureties, conditioned, in addition to the faithful performance of his contract, that he shall promptly make payments to all persons supplying him labor and material in the prosecution of the work provided for therein.

The practical effect of the statute is to confer a special lien in favor of such persons and to substitute this bond, in the place of the public building, as the thing upon which that lien is charged.

The bond is not, therefore, to be considered as if a special private offer of guaranty by the sureties to particular persons from whom their principal may solicit credit in the procurement of labor and materials, but as the performance of a precedent statutory condition of his contract, intended for the benefit of all persons whomsoever, that, relying upon the provisions of the statute, shall have supplied him labor and material in its performance.

The bond sued on follows the general terms of the statute and is the execution of its purpose.

The sureties are as much bound by its true intent and meaning as the principal who executed it with them, and their liability is to be determined by the same general rule

of construction. *Fulton* v. *Fletcher,* 12 App. D. C. 1, 17; *United States* v. *Maloney,* 4 App. D. C. 505, 511.

We see no reason why the liability of the sureties in this case should not be governed by the same rule of construction that applies in the assertion of similar liens against the private owners of buildings under the ordinary lien laws, rather than by that which applies in the case of special private bonds, or letters of credit and of commercial guaranty, wherein, especially by the older authorities, sureties have been regarded with especial favor by the courts, and, in consequence, have had the obligations of such contracts interpreted with the greatest strictness. Nor is there any just reason why greater consideration should be given to the sureties in such bonds than to the private owners of property, who are in no better condition to protect themselves against the defaults of contractors.

As a general rule, statutes providing for liens in favor of those furnishing labor and materials used in the construction of buildings have been liberally construed in aid of the suppression of the mischief and the advancement of the remedy. *Mining Co.* v. *Cullins,* 104 U. S. 176, 177.

It is a reasonable rule of construction of such statutes, creating liabilities that did not before exist, that they are limited to such persons and purposes as come directly, or by necessary implication, within their granting words. And it is in accordance therewith that we have held that the mechanic's lien law of this District does not extend to the subcontractors of a subcontractor. *Leitch* v. *Hospital* 6 App. D. C. 247, 257; *Herrell* v. *Donovan,* 7 App. D. C. 322.

Applying the same rule to the statute under consideration, it is conceded that the remedy on the bond must be confined to those who supply the labor and materials to the contractor; those supplying his subcontractors are not within its contemplation.

Founded on that conclusion, the contention of the ap-

pellees in support of the judgment is, that the condition of the bond can not be extended to contracts for labor and materials other than those made with the principal contractor alone. Their argument is, that the sureties in the bond guaranteed the performance of Winfree's contracts only, and that they have the right to stand on the very letter of their guaranty; their liability can not be enlarged by construction; to hold them liable upon the contract of Winfree & Esher would be holding them as guarantors of a contract which the language of the bond does not cover; that the objection goes to the identity of the contract; that the contract between the plaintiff and Winfree & Esher is several as well as joint does not alter the situation, because it is not Winfree's sole contract; that the sureties were willing to guarantee any contract made by Winfree alone, does not warrant an inference that they were willing to and did guarantee contracts made by him and another; that they might be willing to trust the judgment and capacity of Winfree alone, but not having said that they were willing to trust those of any other person, the court ought not, by inference or construction, to enlarge their undertaking.

This contention, we think, is sufficiently answered by what has been said hereinabove in respect of the right rule of construction to be applied in determining the scope of the obligation and liability of the sureties. In consideration of the argument in support of the contention, it may be added, that the question, under the statute, is not one of the guaranty of the performance of any and all subcontracts that the contractor might make concerning labor and materials. The statute does not require any such condition; the condition is, simply, that the contractor "shall promptly make payments to all persons supplying him labor and materials in the prosecution of the work provided for in such contract"—that is, his own contract with the United States.

The question is: Does the evidence show that the appel-

lant supplied labor and materials to Winfree in the prosecution of his contract, within the true intent and meaning of the statute?

It is contended that the appellant is without the protection of the statute, because, by the introduction of Esher, as indicated by the contract of appellant with Winfree and Esher, a third party has been interposed between the appellant on one hand, and the original contractor, Winfree, on the other. In other words, Winfree and Esher, as associated in the contract with the appellant, are to be regarded as subcontractors of Winfree in his individual capacity as the principal contractor.

To maintain this view of the effect of the evidence requires, again, too strict and narrow a construction of the statute.

It does not appear that Winfree and Esher entered into a regular partnership, but had they done so the partnership could not have taken an assignment of the contract; that was forbidden by law. R. S., Sec. 3737. Nor does it appear even that Winfree associated Esher with him in the performance under some agreement for sharing the proceeds or profits of the contract. This he might have done, as well as let the performance of parts to subcontractors. *Hobbs* v. *McLean,* 117 U. S. 567, 576; *Manning* v. *Ellicott,* 9 App. D. C. 71, 80.

As the case will be remanded for a new trial, and therein additional evidence may be offered, it is proper to say that, whether Winfree and Esher became actual partners, or whatever their relations were, as to each other, in respect of the work and profits of the contract, is immaterial, in our view of the operation of the statute, upon the facts showing the actual supply of the materials and labor and their entry into the building.

Winfree alone was recognized as the contractor, and he was actually, personally engaged in the performance of the contract. Whilst he was so engaged the labor and mate-

rials were supplied and went into the building in the manner required by the terms of the contract, and as such were received by the United States, and paid for to Winfree.

The contract for the supply of the labor and materials was not with the partnership of Winfree and Esher, if any such in fact existed.  It was the contract of W. W. Winfree and George C. Esher by which they became severally as well as jointly bound to the Marble Company.

As long then as Winfree remained in the personal performance of this contract, the labor and materials were supplied him upon his individual contract or order, or upon a contract with him and Esher jointly—he remaining severally liable therefor—his independent relations with Esher ought not to affect the rights of those who supplied the labor and materials.  Under a fair and liberal construction of the statute they are to be regarded as supplied, nevertheless, to the contractor.  As regards the relations thus created between appellant and Winfree, Esher, in respect of appellant's right under the statute, may be considered in the light of a surety for Winfree and nothing more.

So far as we have been able to ascertain, the reports disclose no case where the statute under consideration has received judicial interpretation; and there are but few decided cases that furnish any analogy.  These, we think support the conclusion at which we have arrived, and we will discuss them as briefly as possible.

The first of these is relied on also by the appellees. *Wells* v. *Mehl*, 25 Kansas, 205:

The contractor for the construction of a railroad gave a bond required by law as a substitute for a lien upon the road in favor of persons furnishing labor, materials and provisions.  The contractor let certain work of construction to a subcontractor.  Plaintiff furnished provisions to the subcontractor for the use of his laborers, which remained unpaid for.  He sued upon the bond to recover the amount of the debt.  The court, in interpreting the statute under

which the bond had been entered into, said that it contained two purposes: The first to make the sureties liable ·for labor and materials of every kind that entered into ·the road, and second, for provisions that might be furnished to the contractor. Consequently, it was said, that the liability on the bond extended to all persons furnishing such labor and material, no matter how far removed from the original contractor; but for provisions furnished the liability ended with those supplied to the contractor in person, and not to a subcontractor. It was said that the bond had been substituted for the road as the subject-matter for the enforcement of the lien, and that "when it is sought to extend the bond beyond that which enters into and ·forms a part of the road, there must be, outside and independent of the bond, a personal liability of the contractor."

There is nothing in the reasoning or conclusion in the above case to warrant an inference that recovery would also have been denied the plaintiff had it appeared that instead of expressly subletting the particular work, the contractor had merely associated the party with himself for the purpose by giving him some character of interest. The applied test of the liability of the sureties was the existence of a personal liability on the part of the original contractor for the provisions furnished. The conditions of that test plainly exist in this case; the original contractor is personally and severally liable for the labor and materials supplied, " outside and independent of the bond."

It was by reason of the existence of a personal liability on the part of the principal contractor, entered into for the purpose of enabling his subcontractor to obtain materials for the performance of his subcontract, that this court held, in a recent case, that the party who furnished those materials, for the price of which both the party who received them and the contractor who gave the order upon which they were delivered, were severally liable, was entitled to the enforcement of a lien. *Somerville* v. *Williams,* 12 App. D. C.

520, 526. By virtue of that personal liability of the contractor, the case was distinguished from those wherein it had been held that the mechanics' lien law of the District did not extend its benefits to the subcontractor of a subcontractor.

Another case, arising under a mechanics' lien law, is that of *Van Horne* v. *Van Dyke*, 96 Wis. 30, 32.

As appears from the opinion in that case, Edmunds & Dietrich had been partners as contractors, but dissolved their partnership September 22, 1894. Prior to that time they had submitted a proposition to Van Dyke for the construction of a house contemplated by him, which had not been accepted. Subsequently to the dissolution of the partnership aforesaid, he entered into a contract with Dietrich individually. Five days thereafter Dietrich and Edmunds re-entered into partnership; but Van Dyke, though requested thereto, expressly refused to modify the contract and admit Edmunds or the new partnership therein. The partnership, however, prosecuted the work, and in the course of the same Van Horne and others furnished labor and materials upon contracts made with said partnership. The trial court denied the enforcement of the lien. The decree was reversed. Cassidy, C. J., speaking for the court, said:

" The radical error of the trial court, as it appears to us, consists in holding, in effect, that the firm of Edmunds & Dietrich were not the principal contractors, but subcontractors under Dietrich individually, as the sole and only principal contractor, and hence, that the several appellants were subcontractors of subcontractors. . . . Within the purview of the statute, we must hold that the firm of Edmunds & Dietrich were, in equity, and essentially, the principal contractors, notwithstanding the written contract was in the name of only one of the principals of the firm individually."

The last case to which we shall call attention arose on a

statutory bond given for a different purpose, but its decision turned upon practically the same question to be decided in this case. *Kuhn* v. *Abat,* 14 Martin (N. S. 2) 168.

Dutillet was a licensed auctioneer, and, as such was required to give bond for the payment of sums received by him from auction sales. He entered into partnership with one Sagory, and carried on business as Dutillet & Sagory. Plaintiff consigned goods to them for sale, and this suit was brought upon the bond of Dutillet to recover the proceeds. Their defense was the same made here, that they were not liable because their bond was required and entered into as security for the defaults of Dutillet, and not of any partnership of which he might become a member. The defense was overruled. The court said: "It is clear that the goods were placed in the hands of Dutillet & Sagory to be sold at auction, and that they were thus disposed of. None but persons licensed for that purpose can lawfully sell at auction; therefore if they were properly sold, it must be considered as the act of Dutillet, who alone had authority to make the sale; and the obligation which his sureties contracted in consequence of the privilege granted to him by the Government ought not to be impaired by the circumstance of his having conducted the affairs of his office with the aid of a partner in the profits, any more than they would be if he had acted by the assistance of a hired clerk."

For the reasons given the judgment will be reversed, with costs to the appellant, and the cause remanded, with directions to set aside the verdict and grant a new trial.

*Reversed.*