## ROTH et al. v. EISINGER MILL & LUMBER CO., Inc., et al.

### No. 6023.

Court of Appeals of the District of Columbia.

Argued Feb. 8, 1934.

Decided March 12, 1934.

Rehearing Denied April 2, 1934.

James A. O'Shea, John H. Burnett, and Alfred Goldstein, all of Washington, D. C., for appellant Thomas F. Sweeney.

W. C. English, of Washington, D. C., for appellant Joseph A. Roth.

Stanton C. Peelle, Paul E. Lesh, Dale D. Drain, and Jerome F. Barnard, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

This is a proceeding in equity, and the findings of the court below "upon the pleadings and testimony" are substantially as follows: On or about the 17th of March, 1927, defendants Adolph Meyer and B. W. Stauffer (against whom pro confesso decrees have been taken) were the owners of record of lot 50, in square 1740, in the District of Columbia. By deed dated March 7, 1927, and recorded March 11, 1927, they conveyed the lot to Joseph A. Roth and Thomas F. Sweeney (appellants here), as trustees, to secure Ambrose R. Swann and Harry B. Moore in the sum of $3,650, payable one year after date. On the 15th day of March, 1927, Meyer and Stauffer began the construction of a dwelling house on the lot, to be known as No. 5204 41st Street, N. W., "and also a dwelling house adjacent and to be attached thereto and to be known as No. 5206 41st Street, N. W., and to be on lot 49, in square 1740, also owned by Meyer and Stauffer."

On the 7th of April, 1927, Meyer and Stauffer entered into a contract with plaintiff Eisinger Mill & Lumber Company, Inc., to furnish and deliver, and the company did furnish and deliver, at such semidetached structures building material to be used in the construction of two semidetached dwelling houses; that the amount due for such materials of the plaintiff from Meyer and Stauffer "was in the sum of $3,145.34," of which there was paid by Meyer and Stauffer on account the sum of $1,250, leaving a balance of $1,-895.34.

Plaintiff Eisinger Mill & Lumber Company became entitled to a lien, and on the 15th day of September, 1927, within the time prescribed by law and before the completion of the building known as No. 5204 41st Street, N.W., "it filed in the office of the Clerk of the Supreme Court of the District of Columbia, a notice, in writing, of its intention to hold a mechanic's lien upon the aforesaid real estate described as lot No. 50, in square 1740, and the building thereon, ∗ ∗ ∗ for the sum of $1,895.34, with interest thereon from June 27, 1927, ∗ ∗ ∗ and that said notice of lien was duly recorded in mechanic's lien book No. 15, at page 256."

Substantially the same finding was made as to the defendant D. Sabatini (an appellee here), who furnished labor and material for the same premises, except that the amount claimed was $100.

Before the building erected on lot 50 had been fully completed, Roth and Sweeney sold that lot and the improvements thereon by foreclosure under the deed of trust, and received the sum of $1,180.76, "representing the net amount payable to them as such trustees from the purchaser ∗ ∗ ∗ after full payment and satisfaction of the amounts secured by prior trusts of record, including the aforesaid deed of trust to the defendant trustees; that plaintiff, Eisinger Mill & Lumber Co., Inc., thereupon, and while the aforesaid fund of $1,180.76 was in the hands of the defendant trustees, notified each of them of its aforesaid claim by lien, first upon the aforesaid real estate, and thereafter upon the net proceeds arising from said sale, amounting to the sum of $1,180.76, which lien was at that time valid and outstanding and unreleased; that the defendant trustees, in spite of such actual and constructive notice to them, on the part of the plaintiff and in defiance of the same, and of the aforesaid lien claim of record of the defendant, D. Sabatini, against the fund in the hands of the trustees, and in disregard of such notice

to them, paid the fund of $1,180.76 to the defendants, Adolph Meyer and B. W. Stauffer, on December 14, 1927."

The court concluded that upon the sale of the property by the trustees, the respective liens of the two lienholders in equity followed and were transferred to the fund of $1,180.76 in the hands of the trustees, Roth and Sweeney, and that they are personally liable therefor. The court thereupon entered a decree for plaintiff against Roth and Sweeney in the sum of $1,121.71, with interest from December 14, 1927, and in the amount of $59.05, with interest, for Sabatini.

The findings of fact made by the court below, there being competent evidence to support them, are controlling here. Butte & Superior Copper Co. v. Clark-Montana Realty Co., 249 U. S. 12, 30, 39 S. Ct. 231, 63 L. Ed. 447; United Shoe Mach. Co. v. United States, 258 U. S. 451, 455, 42 S. Ct. 363, 66 L. Ed. 708; Shell Petroleum Prod., Inc. v. White, 62 App. D. C. 332, 68 F.(2d) 379, 62 W. L. R. 3; Lipski v. Burch, 63 App. D. C. 104, 69 F.(2d) 842. Moreover, the record does not purport to contain all the evidence adduced at the trial. See Klopfer v. District of Columbia, 25 App. D. C. 41; McCaully v. United States, 25 App. D. C. 404.

Appellants first contend that the bill and proof do not support the decree, in that the bill alleges that appellants were sued as trustees while the decree charges them individually. This point forms no part of the assignments of error and is devoid of merit. Appellants were proceeded against as trustees, and the bill prays that they be required to account to the plaintiffs for the fund rightfully belonging to them but wrongfully and improperly turned over by the trustees in violation of their duties as such. The theory of the bill, which was fully understood below, was that the trustees by unlawfully making payments to the mortgagor became personally responsible to the plaintiffs. Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183; Church, Inc., v. Holmes, 60 App. D. C. 27, 46 F.(2d) 608.

It is next contended that plaintiff's bill is not "a bill for accounting in the nature of a bill to enforce a mechanic's lien," as contended by plaintiff, and hence that the bill should be dismissed. Appellants rely upon our decision in the Church Case, 60 App. D. C. 27, 46 F.(2d) 608, 610, where an action in assumpsit to enforce a judgment lien against the trustees was sustained, but the court did not pass upon the question whether a pro-

ceeding in equity is the proper remedy to enforce a mechanic's lien or to obtain an accounting from the trustees as to any surplus from the sale of the property. To rule that a proceeding in equity is not the proper remedy would be violative of the provisions of section 360, title 25, D. C. Code 1929 (section 1246, D. C. Code, 1901), which provides that "the proceeding to enforce the lien (mechanic's) hereby given shall be a bill in equity, which shall contain a brief statement of the contract on which the claim is founded; * * * and shall pray that the premises be sold and the proceeds of sale applied to the satisfaction of the lien. * * * All or any number of persons having liens on the same property may join in one suit, their respective claims being distinctly stated in separate paragraphs. * * * "

In the Church Case we said: "The trustees, under a deed of trust, occupy a dual relation. They represent primarily the mortgagee to the extent of satisfying the mortgage, and, in case of sale, conveying the property to the purchaser. They are likewise trustees for the mortgagor or owner of the equity of redemption, as to any surplus derived from the sale above the amount necessary to satisfy the claim of the mortgagee. Dennett v. Perkins, 214 Mass. 449, 101 N. E. 994. They are, therefore, custodians of the fund and bound to apply it properly, and are liable to the person or persons entitled thereto, and, where they fail to properly apply the funds, they are liable to the person damaged by such failure. [Citing cases.]"

In La Centra v. Jackson, 245 Mass. 14, 139 N. E. 429, 430, involving a mechanic's lien, the court said: "The foreclosure of the first mortgage did not operate to discharge the incumbrance of the lien, but in equity it attached to the proceeds of the sale over the amount due on the mortgage and expenses of sale; the surplus remaining stood in the place of the property, and could be reached and applied in payment of the amount of the lien found to be due, unless and until a valid bond had been approved and filed discharging the lien."

In Knowles v. Sullivan, 182 Mass. 318, 65 N. E. 389, the court said (opinion by Holmes, C. J.): "The land having been sold under the paramount title of the mortgagee, the lienholders' claim is regarded by equity as transferred to the surplus proceeds."

■ In the present case the property had been sold by the trustees, but, after satisfying the senior liens, they became trustees for the mortgagor as to any surplus, which immediately became subject to the claims of the junior lien creditors. In other words, the fund obtained from the sale of the property took its place in the proceeding to enforce the lien. That proceeding brought before the court all conflicting interests, required the trustees to account for the funds received by them, and determined the amount of the established liens. "The fact that the relief demanded is a recovery of money only is not important in deciding the question as to the jurisdiction of equity." Clews v. Jamieson, 182 U. S. 461, 479, 21 S. Ct. 845, 852, 45 L. Ed. 1183.

■ There was evidence in the court below that appellee Eisinger Company filed separate notices of lien, each in the full amount of the balance due ($1,895.34), against each of the two lots, and that appellee Sabatini also filed separate notices of lien, each in the full amount of the balance due, against each of the two lots, and that on April 16, 1927, each lienor released as to lot 49. It is contended by appellants that the contract to furnish the materials on the two houses was an entirety and could not be split. Section 364, title 25, D. C. Code 1929 (section 1250, D. C. Code 1901), provides that "in case of labor done or materials furnished for the erection or repair of two or more buildings joined together and owned by the same person or persons, it shall not be necessary to determine the amount of work done or materials furnished for each separate building, but only the aggregate amount upon all the buildings so joined, and the decree may be for the sale of all the buildings and the land on which they are erected as one building, or they may be sold separately if it shall seem best to the court." There was no attempt by these materialmen to split their contracts. They were entitled to a lien on both lots, and waived as to one. Neither the owners of the property, against whom pro confesso decrees have been taken and who have not raised the question, nor the trustees were in any way prejudiced by such a waiver, and, so far as disclosed by the record, no others were interested. See Reilly v. Williams, 47 Minn. 590, 50 N. W. 826. Had there been no release of the lien on lot 49, nevertheless the court could have decreed, and under the facts in this record would have been justified in decreeing, that only lot 50 be sold, if such course should "seem best." Section 364, tit. 25, D. C. Code 1929.

Decree affirmed, with costs.

Affirmed.