ARTHUR H. FRANKLIN, as Treasurer of the New York Stock Exchange, and Others, Plaintiffs, *v.* FAIRMAN R. DICK and Others, as Trustees of the Gratuity Fund of the New York Stock Exchange, Defendants.

First Department, June 18, 1941.

*Harrison Tweed* of counsel [*W. Rice Brewster, Daniel G. Tenney, Jr.*, and *Harry F. Bliss, Jr.*, with him on the brief; *Milbank, Tweed & Hope*, attorneys], for the plaintiffs.

*George H. Corey* of counsel [*William Man Parkhurst* with him on the brief; *Man & Man*, attorneys], for the defendants.

CALLAHAN, J. This submission of controversy presents the question of the validity of an amendment to the constitution of the New York Stock Exchange adopted by the members on March 26, 1941. The amendment relates to the use of a fund known as the gratuity fund. Under the former constitution only the income from that fund might be used for the purposes hereinafter referred to. The amendment permitted, under certain circumstances, the use of part of the principal as well as the income from the fund. The question involved is whether such amendment impaired any vested rights of members. The trustees of the gratuity fund, by advice of counsel, have raised the issue. They are seeking to have the question determined before recognizing the validity of the amendment.

The New York Stock Exchange is a voluntary association of more than seven persons. Plaintiff Franklin is the treasurer thereof, and the other plaintiffs are individual members who voted in favor of the amendment involved. The defendants are the trustees of the gratuity fund.

All members of the Exchange, upon election to membership, are required to sign the constitution and agree to be bound by its terms, including all amendments thereafter from time to time adopted.

Since 1873 provision has been made in the constitution of the Exchange for a gratuity plan providing for the payment to the family of each deceased member of an amount which originally was fixed at $10,000 and later increased to $20,000. In connection with the plan, provision was made for the establishment of a fund to be known as the gratuity fund, which was to be built up from initial fees paid by new members, from contributions by the Exchange of a portion of the profits, and from accumulated interest on the invested capital of the fund. While the provisions as to the building up of the gratuity fund have changed from time to time,

the constitution has at all times provided for payment of gratuities solely from assessments imposed in a fixed amount on living members upon the death of each fellow member. The Exchange did not pledge its credit to pay the gratuities, except to the extent that it had received funds from the above sources for such purpose. The constitution also provided for the creation of a gratuity fund, the income from which was to be used to reduce the amount which members would be called upon to pay each year by reason of assessments.

We find from an examination of the provisions of the constitution with respect to this fund that the plan did not afford claimants representing deceased members any right to the principal or income of the fund. Said fund was to be held solely for the purpose of aiding surviving members by reducing the burden imposed on them by the assessments. The obligation of each member to pay gratuity assessments was an obligation which the constitution specifically provided was not to be impaired in any essential particular. From time to time the method of crediting members with the income from the gratuity fund had been changed by amendment of the constitution, but the constitution always provided in effect that the trustees of the gratuity fund pay over to the treasurer of the Exchange the net income of the fund during each year, and each member was to be credited with his proportion of the amount so paid in reduction of his payments for assessments.

The contested amendment of March 26, 1941, provided that at the close of each quarter the trustees of the fund, if it was found that the principal of the fund was in excess of $500,000, were to pay to the treasurer of the Exchange out of capital or accumulated income, a sum equal to the lesser of (1) the entire amount of such excess, or (2) such part of such excess as equalled the aggregate of the assessments payable by members during the quarter. The sum so received by the treasurer was to be credited proportionately against the amounts of assessments paid or payable by members. It will, therefore, be seen that the amendment provided for the use of part of the principal of the fund to reduce the burdens of the members in meeting assessments, whereas prior to its adoption only the income was to be used for such purpose. It is this distribution of capital which the trustees question, contending that it impairs vested rights.

The present principal of the fund amounts to $1,939,725.57. This principal may be reduced to $500,000 by force of the amendment.

Whether or not a member had a vested right in the principal of the fund would depend upon whether under the provisions

of the constitution, as it was written prior to amendment, a contract is to be spelled out that such principal should be used solely for the purpose of securing payment of gratuities to the representatives of deceased members. In determining this question we must remember that representatives of deceased members would be bound by all provisions of the constitution, including those providing for its amendment.

The question does not rest upon general principles of equity, but the rights of the parties are to be tested with reference to the constitution of the Exchange, which is in the nature of a contract setting forth the standards by which we are to determine such rights. (*Matter of Equitable Reserve Fund Life Assn.*, 131 N. Y. 354.) Measuring it in this light, we find no contract obligation to hold the principal of the gratuity fund to secure death benefits. The essential purpose of the gratuity fund was to assist surviving members to pay their assessments. The constitution expressly limited the right of the holder of a death claim to payment from the amount collected by the assessment made against surviving members on account of the death of the deceased. The right of living members to alter the method whereby relief was to be afforded to them, plainly exists. Each member agreed to be bound by any change in the constitution, except, perhaps, a change in the provision for collection of assessments for the payment of death benefits.

The members of a voluntary association have full power over the business of the association and its assets, subject to constitutional provisions and limits, and, of course, to statutory limitations.

The amendment of March 26, 1941, seems to be a proper exercise of the power of control reserved in the members. It was neither an impairment of any vested right, nor was it an unreasonable disposition of funds, in view of the reserved power.

The trustees rely largely on the case of *Parish* v. *New York Produce Exchange* (169 N. Y. 34) as authority for their contention that the amendment is invalid. We do not so construe that decision. The New York Produce Exchange, an incorporated body, had installed a life insurance feature, or " a system of gratuity." A special act of the Legislature provided that the purpose of the Exchange might be enlarged so that it might make provision for widows and families of deceased members. This authority included the right to assess members, so that a fund might be created, from which payments were to be made to the widow or next of kin of a deceased member. A plan authorized by statute was adopted to carry out this insurance feature. It provided for an assessment against surviving members of a specified sum.

Mathematically calculated, it was plain from the plan itself that the amount of gratuity payable to the families of deceased members was not to come wholly from assessments. A portion thereof was required to be met by contributions from the gratuity fund. By amendment to its by-laws the New York Produce Exchange attempted to limit the number of assessments in any year, and thus reduce the amount the next of kin of a deceased member would otherwise receive. This amendment also proposed that the whole of the gratuity fund might be distributed in accordance with the just and equitable rights of the members. The court held, in the light of these facts, that the amendment to the by-laws referred to was void and in violation of the contract of the subscribing members with the corporation, which contract was made up of the charter and by-laws. The opinion of the Court of Appeals pointed out that the charter and by-laws provided that the gratuity fund to be accumulated was to be paid to the widow, children, next of kin, or other persons dependent upon the deceased member. Under the circumstances the court held that the persons who received the gratuity fund with this object in view held it in trust for the purposes indicated. The amendment in the *Parish* case was held to be void, not only because it interfered with the rights of members under their contract with the corporation, but because it violated the provision of the statute creating the New York Produce Exchange. It is plain that this decision rests largely on the fact that the fund being disbursed had been created as the source from which gratuities were to be paid, and was impressed with a trust that it be held as security for such payments.

Contrary to the situation in the *Parish* case (*supra*), the gratuity fund of the New York Stock Exchange was not to be the source from which any part of the death benefits was to be paid, nor was it to be security for the payment thereof. Again, the present amendment does not affect the amount which any beneficiary of a deceased member will receive in the future, nor does the present amendment run counter to any limitation of charter powers. An unincorporated exchange, which owes its existence only to the compact of its members, has no restriction upon its power to prescribe rules, except that they must be adopted in conformity with the agreement of the members and must not be contrary to the law of the land. (Meyer, The Law of Stockbrokers and Stock Exchanges, [1931] § 7, pp. 83–84.)

We find that the amendment of March 26, 1941, is valid and does not impair any rights of either approving or disapproving members. It is binding upon the trustees of the gratuity fund.

Judgment should be directed in favor of the plaintiffs, without costs.

MARTIN, P. J., TOWNLEY, GLENNON and DORE, JJ., concur.

Judgment unanimously directed in favor of the plaintiffs, without costs. Settle order on notice.