JOHN W. JOHNSON, Inc., a Corporation, Appellant,

v.

2500 WISCONSIN AVE., Inc., et al., Appellees.

No. 12614.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 19, 1955.

Decided Feb. 16, 1956.

Mr. Dexter M. Kohn, Washington, D. C., with whom Mr. J. E. Bindeman, Washington, D. C., was on the brief, for appellant.

Mr. Harry L. Ryan, Jr., Washington, D. C., with whom Mr. Roger J. Whiteford, Washington, D. C., was on the brief, for appellees.

Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant (plaintiff) appeals from a judgment awarding it damages of $617.-48, following arbitration proceedings. Appellant claims the court erred in refusing to permit it to withdraw prior to the award of the arbitrators and in ordering the arbitration to continue after appellant's notice of withdrawal. An understanding of the controversy depends largely upon the factual situation.

Appellant contracted for the sum of $73,000 to paint certain premises located at 2500 Wisconsin Avenue, N. W., District of Columbia, owned by one appellee, and managed by the other. A dispute having arisen over changes and additions as the job progressed, appellant filed notice of its intention to assert a mechanic's lien for a $17,000 balance of a total of some $112,000 claimed, and instituted action in the District Court to enforce its lien. Answer having been filed, the case was calendared for trial, December 21, 1951.

The action had been commenced notwithstanding that the original contract contained an arbitration clause. After taking the depositions of the appellees, appellant on March 18, 1952, for the first time invoked the arbitration clause and sought the appointment of arbitrators. Appellees replied that by the commencement of this action, appellant had waived its right to arbitration and was estopped from proceeding. Again on April 29, 1952, appellant insisted upon arbitration, whereupon the American Arbitration Association advised appellees that arbitration must proceed unless stayed by agreement of the parties or by court order. The appellant then moved the court to stay its hand and to compel arbitration. After argument, the motion was denied by Judge Holtzoff. Appellees then counterclaimed, seeking $30,000 damages for alleged breach of contract, and reply having been filed, pre-trial proceedings were conducted by Chief Judge Laws on May 28, 1953.

As the case was readied for trial, the respective parties on December 3, 1953, entered into a separate and new agreement for the determination and settlement of their controversies by arbitration. Their agreement expressly recited the pendency of the complaint and counterclaim and made provision for the entry of judgment upon an award to be rendered by the arbitrators chosen by the parties. The respective parties reduced their claims to writing, a series of hearings were scheduled, and, commencing April 26, 1954, until August 9, 1954, were conducted by the arbitrators on dates and at times mutually agreeable. The pending court action in May 1954, was reached for assignment, and appellant was so notified by the Assignment Commissioner, but the case was continued on the calendar due to the pendency of the arbitration hearings, then under way. On two occasions, actually, prior to October 12, 1954, the Assignment Commissioner notified the parties that the case had been reached for trial. Appellant finally was notified that the case had been assigned for trial October 18, 1954. About this time, the arbitrators concluded their deliberations and scheduled a meeting among themselves for October 16, 1954, for the purpose of reducing their award to written form.

Appellant's notice of withdrawal, dated October 12, 1954, without prior notice to or consent of the appellees, and without court approval of the attempted change of position, stimulated the appellees forthwith to move the court to permit the arbitrators to conclude their proceedings and to consummate the same by the rendition of an award. The court after consideration of the papers and after oral argument, so ordered, and within the ten days permitted for the termination of deliberations and for en-

try of the award, the arbitrators filed their award with the court. The appellants were awarded the sum of $11,427.-30, and appellees the sum of $10,809.89. The arbitrators directed a set-off, resulting in a net recovery against appellees of $617.48. Judgment was entered accordingly.

It should be noted that the original contract contained the standard clause relating to arbitration proceedings sponsored by the American Institute of Architects, which in turn provides for arbitration through the facilities of the American Arbitration Association. However, the superseding agreement, in far more limiting fashion, provided only that "The hearing shall be conducted in accordance with procedure for *oral* hearing as contained in the Commercial Arbitration Rules of the American Arbitration Association, same being attached hereto and being Rules 20 to 35, inclusive." (Emphasis added.) The parties expressly agreed that their dispute was to "be determined and settled" by the arbitrators, that their award "shall be final and binding," that the "parties do herewith agree to abide by, observe, and perform the directions and award of the arbitrators," and "the judgment upon the award rendered by the arbitration may be entered in said Civil Action No. 4936-51 in the United States District Court for the District of Columbia," this very action. Nothing whatever was said about a time limitation within which the award was to be made, rather it was declared to be "the intention of the parties that all said matters in controversy between them shall be considered and decided in such way as to cause justice to be done between the parties."

■ Appellant purported to base its attempted withdrawal from arbitration upon the failure of the arbitrators to come to a decision by October 12, 1954, asserting such failure "is in violation of Article[s] 35 and 40 of the Commercial Rules of the American Arbitration Association." But there was no claim that the arbitrators were reopening the hear-

ings, and we see no evidence of violation of Article 35. Moreover, there was no time specified in the agreement within which an award was to be made, and it does not appear that either party ever notified the arbitrators that it was expected their award would be made within thirty days from the date of closing the hearings. A fair reading of the source of their authority, the agreement of the parties, could have indicated to the arbitrators that they were to take such time as was reasonably necessary to consider the evidence and the opposing claims, and "to cause justice to be done." We conclude, therefore, that an attempt to justify withdrawal on an alleged violation of Articles 35 and 40 lacks merit.

Appellant next argues that, in any event, the federal courts will not enforce specifically any agreement to arbitrate not so enforceable at common law so that appellant was privileged to withdraw its agreement at any time before the award was made. Appellant relies upon Red Cross Line v. Atlantic Fruit Co., 1924, 264 U.S. 109, at pages 120–121, 44 S.Ct. 274, at page 276, 68 L.Ed. 582, particularly the statement of the rule reading:

"The federal courts—like those of the states and of England—have, both in equity and at law, denied, in large measure, the aid of their processes to those seeking to enforce executory agreements to arbitrate disputes. They have declined to compel specific performance * * * or to stay proceedings on the original cause of action. * * * They have not given effect to the executory agreement as a plea in bar, except in those cases where the agreement, leaving the general question of liability to judicial decision, confines the arbitration to determining the amount payable or to furnishing essential evidence of specific facts, and makes it a condition precedent to the cause of action."

■■ A long line of cases supports appellant's contention, indeed as recently as Bernhardt v. Polygraphic Co.,[1] the

1. 350 U.S. 198, 76 S.Ct. 273, 275.

Court recognized the law of Vermont to be that an agreement to submit to arbitration would not be binding and could be revoked at any time before an award was made. The statute considered in that case, the United States Arbitration Act,[2] is the only one possibly applicable to arbitration in the District of Columbia. But as in Bernhard, we cannot say that a contract to paint a building in the District is a " 'transaction involving commerce' " within the meaning of § 2 of the Act, and neither party so contends. Accordingly, absent an applicable statute, local common law must govern. However, we need not at this time decide what the law of the District of Columbia is generally as to specific enforcement of arbitration agreements, because there is a special factor in this case which, we feel, is controlling.

Appellees contend, as Judge McGuire concluded, that under the circumstances of this case, the agreement to arbitrate became a stipulation.[3] In its brief, "Appellant concedes that if a stipulation is filed in a court proceeding, it becomes a rule of court. Hernandez v. Siciliano, 1953, 93 U.S.App.D.C. 122, 208 F.2d 33; Smith v. Whittier, 1892, 95 Cal. 279, 30 P. 529." But, appellant contends the agreement could not become a rule of court or a "stipulation" in the court proceeding until it was filed therein. We do not doubt that the respective parties have taken into account the language of Mr. Justice Brandeis in Red Cross Line

v. Atlantic Fruit Co., supra, 264 U.S. at pages 121–122, 44 S.Ct. at page 276: "And, although there is no federal legislation on the subject, an executory agreement, however comprehensive, will, if made a rule of court, be enforced in courts of the United States by any appropriate process. Heckers v. Fowler, 2 Wall. 123, 17 L.Ed. 759."[4]

We have here no problem involving a contract which will be unenforceable because in contravention of public policy. "The protean basis underlying this doctrine has often been stated thus—No one can lawfully do that which tends to injure the public or is detrimental to the public good. If it definitely appears that enforcement of a contract will not be followed by injurious results, generally, at least, what the parties have agreed to ought not to be struck down."[5] Rather, the parties in an obviously arm's length transaction voluntarily agreed to accept a remedy to be afforded by arbitration, "whatever its merits or shortcomings."[6] Our only question is whether or not, under the circumstances present, the agreement achieved the status of a "stipulation," which as "a rule of court" may be enforced in the courts. We have decided in the affirmative.

This proceeding was commenced by a bill in equity.[7] Issue having been joined, it was calendared by the Clerk of the District Court, and became subject to all rules of that court. "The calendaring

---

2. 43 Stat. 883, as amended, 61 Stat. 669, 9 U.S.C. §§ 1–14 (1952).

3. Restatement, Contracts § 94 (1932), reads:
   "Agreements with reference to a proceeding pending in court, made by attorneys representing adverse parties to the proceeding, are not deprived of legal operation because of lack of consideration, nor, if made in the presence of the Court, because made orally. If not made in the presence of the Court, a writing is generally required by statute or rule of court."

4. In the cited case, at page 131 of 2 Wall. Mr. Justice Clifford said:

"Practice of referring pending actions under a rule of court, by consent of parties, was well known at common law, and the report of the referees appointed, when regularly made to the court, pursuant to the rule of reference, and duly accepted, is now universally regarded in the State courts as the proper foundation of judgment [citing cases]."

5. Frost & Co. v. Coeur D'Alene Mines Corp., 1941, 312 U.S. 38, 44, 61 S.Ct. 414, 417, 85 L.Ed. 500.

6. Bernhardt v. Polygraphic Co., supra [350 U.S. 198, 76 S.Ct. 276] note 1; and see Wilko v. Swan, 1953, 346 U.S. 427, 435–38, 74 S.Ct. 182, 98 L.Ed. 168.

7. D.C.Code, 1951, § 38–110.

and assignment of all actions \* \* \* shall be under the direction of the Assignment Judge,[8] who will determine all questions concerning such matters." [9] We take judicial notice of the practice in the District Court that no case may be continued by the Assignment Commissioner, but shall be continued only by order of the Assignment Judge for cause shown. Upon at least one occasion when the case was reached for trial, continuance was granted for the cause shown that the arbitration proceedings were in progress. Had that not been so, the case would have become subject to dismissal without prejudice under Rule 13; and had the action been called for trial, and had no party responded, "the court may dismiss the same." Rule 14 (a). "If a party seeking affirmative relief fails to respond an adversary may have the claim dismissed or have a trial." Rule 14(b).

Here the parties and their attorneys from and after December 3, 1953, knew full well that the ultimate action of the court, its judgment, was suspended pending an award of the arbitrators. That was the purpose of their agreement. It was upon a showing to that effect that the court relied in granting continuances of their action. Not only is that the fact, but Judge McGuire expressly finds that the attempted withdrawal "was without consent of the defendants and without authorization by the court." [10] Stated in the premises of the agreement appear the following clauses:

"WHEREAS, the party of the first part has instituted certain action in the United States District Court for the District of Columbia, known as Civil Action No. 4936–51,

and counterclaim therein has been filed by the parties of the second part against the party of the first part, and

"WHEREAS, it is desired to submit the said controversies to arbitration";

followed by the terms of the agreement looking to the entry of judgment.

To be sure, the arbitrators were named by the parties rather than by the court.[11] But, by April 21, 1954, appellant was invoking the aid of the processes of the court, causing the Clerk to issue the court's subpoena to one of the appellees to appear, testify and produce documents "in arbitration in the above-entitled cause on the 26th day of April, 1954," under the caption of this case. That the parties themselves relied upon the agreement as a stipulation to govern the progress of the litigation seems as clear as that the court accepted their representations and changed the position its rules otherwise permitted it to take. The whole course of the case throughout the better part of 1954 was guided accordingly. "A stipulation in an action will not be considered by the court unless the same be in a writing signed by the party to be bound thereby \* \* \*." [12] Here all parties signed. "The laws impose upon this court the final responsibility as to the order of business; but when these stipulations are made by counsel *or parties* and *acted upon by the court,* they become the act of the court." [13] (Emphasis added.)

In the Strong case, it had been stipulated that the case might be continued until the next term of court.

"The counsel for the defendant were induced by force of these stipu-

8. Chief Judge Laws of the District Court.

9. D.C.D.C., Civ., Rule 11(g), 1941, as amended.

10. As to findings in such an action, see Roth v. Eisinger Mill & Lumber Co., 1934, 63 App.D.C. 128, 70 F.2d 294.

11. And a trial by arbitrators, appointed by the court with the consent of both parties, is one of the modes of prosecuting

a suit to judgment as well established and as fully warranted by law as a trial by jury." Taney, C. J. in Alexandria Canal Co. v. Swann, 5 How. 83, 1847, 46 U.S. 83, 88, 12 L.Ed. 60.

12. D.C.D.C., Civ., Rule 17, 1941, as amended.

13. Strong v. District of Columbia, 1879, 3 MacArthur 499, 515.

lations to believe, and had a right to believe, that the cases would not be pressed, and they were, therefore, altogether unprepared to go on with the trial.

"Under these circumstances the conduct of the plaintiff in insisting upon the repudiation of the stipulation which he himself had signed after it had been prepared by his own counsel, and in openly stultifying himself by insisting he did not understand the effect of his own act under seal, operated a legal surprise, to say the least, upon the defendant.

"In our opinion, for this court to sustain a verdict obtained under such circumstances would be a reproach and scandal to the administration of justice."[14]

The principle upon which the court then premised its observations had stood unchallenged for seventy-five years, indeed so far as we are aware, until now, it has never been questioned. Such continued acquiescence by bench and bar is itself a shining ensconcement of bona fides as the very essence of agreements upon which the courts have acted.

Flouting the provision of the original contract which called for arbitration, this appellant commenced this action. Having taken the defendants' deposition, appellant sought to enforce arbitration in lieu of a trial. Failing then after having been confronted with a counterclaim, a new agreement was reached under which arbitration proceeded.[15] After the hearings had been concluded and just as the arbitrators were about to formalize their report, appellant attempted to withdraw. We cannot doubt the averment of the defendants in their opposition that they had expended large sums of money for the assembling of testimony and evidence pertaining to the issues in the case and "in addition thereto, have through their officers, directors and employees attended every session held by the arbitrators." Continuing, "With the matter so near a final conclusion it would be unconscionable and inequitable to withdraw the matter from the arbitrators and to thrust an added burden upon the court." The position of the appellees, so stated, finds reflection in the memorandum of the trial judge:

"The plaintiff has apparently throughout the whole business had great difficulty in making up its mind. In the course of the suit, which, it is to be noted, was filed in 1951, it has had three different counsel. This is what results in delays which are attributed by the uninitiate to the Courts. The plaintiff wanted arbitration. The defendants did not. Finally the latter acquiesced and now that the matter has been all but concluded, the plaintiff suddenly tries to slip out of the web of its own weaving. The effort comes too late. There must be an end sometime to such vacillation."

It might well have been added that, quite apart from the mentioned inequities, there subsisted the contumely to which the court was exposed after its acceptance of and reliance upon the hearings then in progress in lieu of the action the court otherwise was free to take. The matter at that stage may well have been equated with proceedings under an order of reference by agreement of the parties, or such as may be directed by the court under the Rules.

Under our Code this action was proceeded with as by bill in equity and must be governed by equitable principles. Appellant received the advantage of the arbitration it sought and which had been undertaken, just as appellees had given up their right to a trial and

---

14. Id. at page 516.

15. Thus, this second agreement was not, in derogation of a statute, a waiver, in advance of a claim, of the right to select a forum. Rather, the appellant had not only selected the forum, but had chosen the means, for resolution of the controversy. Cf. Wilko v. Swan, supra note 6, 346 U.S. at page 438, 74 S.Ct. at page 188.

thus had lost the advantages thereof. The court had yielded its prerogatives to the procedure which the parties substituted for the action of the court. We conclude that the trial court committed no error in its refusal to permit appellant to repudiate the obligation of its own agreement.

Affirmed.