**LEGG, MASON & COMPANY, INC.,**
**Plaintiff,**

v.

**MACKALL & COE, INC., et al.,**
**Defendants.**

**Civ. A. No. 2340–72.**

United States District Court,
District of Columbia.

Dec. 13, 1972.

Jeremiah C. Collins, Washington, D.C., John Connally, New York City, for plaintiff.

John A. Beck, Lee Ellis, Washington, D. C., for defendants.

## MEMORANDUM OPINION

RICHEY, District Judge.

This case came before the Court for hearing on the Motion of plaintiff, Legg, Mason & Company, Inc., for a Temporary Restraining Order and the Motion of the defendants to Dismiss or in the Alternative to Stay the Present Action Pending Arbitration pursuant to the Constitution and Rules of the New York Stock Exchange. The Court denied the plaintiff's Motion for a Temporary Restraining Order, finding that the plaintiff had not made the requisite showing of irreparable injury necessary to justify the relief requested, and granted the defendants' Motion to Stay the Present Action Pending Arbitration provided that such arbitration could be had within sixty days from the date of the Court's Order.

The suit seeks injunctive relief and damages arising out of the alleged improper conduct of four former employees of Legg, Mason in concert with Mackall & Coe in establishing a service reporting and advising investment clients on Washington affairs in competition with a service previously offered by Legg, Mason. It is alleged that the former employees in concert with Mackall & Coe stole a unique business idea belonging to Legg, Mason and took certain documents belonging to Legg, Mason with them to set up the competing business. It is further alleged that the former employees in concert with Mackall & Coe are attempting to take clients away from Legg, Mason by improper use of the stolen materials and by disparaging and defaming the service provided by Legg, Mason.

The defendants deny plaintiff's allegations, but their main contention was that this controversy must be resolved by the arbitration procedures of the New York Stock Exchange to which both Legg, Mason and Mackall & Coe are members and signatories. Mackall & Coe and the individual defendants each requested arbitration by Affidavit.

### I. *Issues Presented*

While this action sounds in tort, the issue presented by the defendants' Motion to Stay Pending Arbitration is basically one of contract law—that is, whether there is a binding agreement to arbitrate between the parties. The defendants contend that the arbitration provisions of the New York Stock Exchange Constitution and Rules constitute such a binding agreement.

Article VIII, Section 1 of the New York Stock Exchange Constitution provides in pertinent part:

"Any controversy between parties who are member firms or member corporations shall, at the instance of any such party, and any controversy between a non-member and a member or allied member or member firm or member corporation arising out of the business of such member, allied member, member firm or member corporation, . . . shall at the instance of such nonmember, be submitted for arbitration. . . ."

Rule 345, paragraph J, of the New York Stock Exchange provides that member firms and registered representatives sign the following agreement:

"I agree that any controversy between me and any member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and the rules then obtaining of the New York Stock Exchange."

It is undisputed that the plaintiff, defendant Mackall & Coe, Inc. and the individual defendants are all members, signatories or beneficiaries of the arbitration procedures of the New York Stock Exchange Constitution.

### A. *Whether the Constitution and Rules of the New York Stock Exchange Constitute a Binding Contract Between Its Members*

This Court is not aware of any District of Columbia decisions dealing with the question of whether the Constitution and Rules of the New York Stock Exchange constitute a binding contract.[1] However, the Court may appropriately look for guidance to the decisions of the Federal and state courts sitting in New York, a jurisdiction which has many, if not the most significant contacts with parties who are members, signatories or beneficiaries of the provisions of the New York Stock Exchange Constitution

---

1. Jurisdiction of the Court in this action is not invoked under Federal Statute, nor is it invoked on the grounds of diversity of citizenship. Rather, jurisdiction is alleged under the D.C.Code, § 11–501.

and Rules.[2] There are many such decisions holding that the constitution and rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself. See Brown v. Gilligan, Will & Co., 287 F.Supp. 766 (S.D.N.Y. 1968); Franklin v. Dick, 262 App.Div. 299, 28 N.Y.S.2d 426, aff'd, 287 N.Y. 656, 39 N.E.2d 282 (1941); Cohen v. Thomas, 209 N.Y. 407, 103 N.E. 708 (1913). In Brown v. Gilligan & Will Co., *supra* 287 F.Supp. at 769, the court stated:

> "[E]very member, by virtue of his admission, contracts to be governed by the conditions of membership which the exchange has imposed. These conditions are, therefore, binding on the members, and constitute virtually a body of law by which the members are governed in their dealings with the exchange and with each other."

██ In accordance with the policies and reasoning underlying the above-cited decisions, this Court finds that the Constitution and Rules of the New York Stock Exchange constitute a binding contract between its members.

B. *Whether the Court May Refer This Matter to Arbitration Consistent with the Provisions of the United States Arbitration Act, 9 U.S.C. §§ 1–14.*

Plaintiff contends that this Court is precluded from referring the controversy to arbitration by virtue of the provisions of the United States Arbitration Act, 9 U.S.C. §§ 1–14, which is the only arbitration act applicable in the District of Columbia. John W. Johnson, Inc. v. 2500 Wisconsin Avenue, 98 U.S.App.D.C. 8, 231 F.2d 761 (1956). The key statutory provisions for purposes of this action are sections 2 and 3 of Title 9. Section 2 provides that a written provision for arbitration of a controversy arising out of "any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds at law or in equity for the revocation of any contract."[3] Section 3 requires a federal court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement.

In Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the Supreme Court held that the stay provisions of section 3 apply only to the two kinds of contracts specified in sections 1 and 2 of the Act, namely those in admiralty or evidencing transactions in "commerce." The first question, therefore, is whether the transactions dealt with in this case are transactions "involving commerce." There is no doubt that the contract between the parties to arbitrate controversies under the Constitution and Rules of the New York Stock Exchange evidences a "transaction involving commerce" within the meaning of section 2 of the Act. See Brown v. Gilligan, Will & Co., *supra*. But the plaintiff contends that the transactions alleged in the complaint, being common law business torts, are not such transactions "involving commerce" within the meaning of section 2 of the Act because they bear no relation to the parties' membership in the Stock Exchange.

██ It has been held that a complaint sounding in tort will not in itself prevent arbitration if the underlying

---

**2.** Although the Court has based its choice of law on the "most significant contacts" theory, it notes that under the "place of making" choice of law rule which has been applied in earlier decisions within the District, New York law would still be applicable as a guide. See Bayside-Flushing Gardens v. Beuermann, 36 F.Supp. 706 (D.C.D.C.1941); Cary v. U. S. Hoffman Machinery Corp., 148 F.Supp. 748 (C.A.D.C.1957).

**3.** The meaning of "maritime transaction" and "commerce" is set forth in section 1 of the Act.

contract embraces the disputed matter. See Saucy Susan Products, Inc. v. Allied Old English, Inc., 200 F.Supp. 724 (S.D. N.Y.1951); Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y.1964). The plaintiff's claims arise as a result of alleged breaches of employment contracts with four of the individual defendants. Their employment was pursuant to a contract evidencing a transaction "involving commerce" if their contracts involved work "'in' commerce, . . . producing goods for commerce, or . . . engaging in activity that affected commerce." Bernhardt v. Polygraphic Co., *supra*; Dickstein v. duPont, 320 F.Supp. 150 (D.Mass.1970). Clearly it cannot be said that the service offered by the plaintiffs and the duties of their employees in compiling data, compiling client lists, and contracting clients or potential clients outside the District of Columbia did not affect commerce and so involve commerce within the meaning of Section 2 of the Act. And by virtue of their employment, these employees and their employer, the plaintiff, as members, signatories, or beneficiaries of the New York Stock Exchange Constitution and Rules, were bound by its provisions regarding arbitration. This Court, therefore, is not precluded by the United States Arbitration Act from referring this matter to arbitration.[4]

C. *Whether the New York Stock Exchange Constitution and Rules Encompass the Subject Matter of This Lawsuit*

Plaintiff argues that the subject matter of this lawsuit is not encompassed by the arbitration provisions of the New York Stock Exchange and Rules because the suit alleges common law business torts not unique to the securities industry, and requires a determination of rights and liabilities more commonly within the province of a court than a stock exchange arbitration body.

In countering plaintiff's argument, the defendants again direct the attention of the Court to an opinion issued by a New York court. In Osborne & Thurlow v. Hirsch & Co., 10 Misc.2d 225, 172 N.Y.S.2d 522 (N.Y.Sup.Ct.1958), the Supreme Court of New York County held that a claim for libel was a controversy within the provision of the New York Stock Exchange Constitution requiring arbitration of controversies between member firms. The court stated:

"A 'Controversy' is any difference which can be the subject of a suit at law or equity. . . . While we do not usually associate a claim for libel with arbitration there is no restriction on an agreement to do so. That being the case it would appear that this agreement was sufficiently broad to include it." *Supra* at 523.

The policy underlying broad interpretation of the arbitration provisions is clear. The Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., gave securities exchanges extensive powers of self-regulation, imposing the responsibility for enforcement of their rules on the exchanges themselves. See Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F.2d 838 (C.A.2 1971); Coenen v. R. W. Pressprich & Co., 453 F.2d 1209 (C.A.2 1972). The Court in *Coenen, supra*, at 1215, noted that the arbitration

---

4. The plaintiff also raises the issue of applicability of the United States Arbitration Act in view of the provisions of section 1 of the Act, which states that "nothing herein contained shall apply to contracts of employment as seamen, railroad employees, or any other class of worker engaged in foreign or interstate commerce." While the limitations of these provisions have not been defined by the Supreme Court, the Court of Appeals for the First Circuit has held that an account executive of a brokerage firm is not a "worker" within the meaning of section 1, apparently basing its holding on the rationale that the exception is limited to employees involved in, or closely related to, the actual movement of goods in interstate commerce. Dickstein v. duPont, 443 F.2d 783 (C.A. 2 1971). Based on the holding in *Dickstein supra*, this Court finds that the exception does not apply to the individual employee defendants in this action.

clause of the New York Stock Exchange Constitution is "the most significant of the measures taken to implement the self-regulation contemplated by the 1934 Act. . . ." Broad interpretation of the arbitration clause prevents those controversies which are "breeder[s] of illfeeling between members of the Exchange" from being brought into the courts and allows them to be settled by the members' own procedures. *Id.* at 1215. The Court should give that policy its fullest possible effect.

 In addition, the fact that the plaintiff's action is based on several theories of recovery, some of which may not be applicable to arbitration, does not serve to render arbitration inapplicable to the action as a whole. Coenen v. R. W. Pressprich & Co., *supra*; Tepper Realty Co. v. Mosaic Tile Co., 259 F. Supp. 688 (S.D.N.Y.1966).

## II. *The Continuing Jurisdiction of the Court*

 The basic purpose of the United States Arbitration Act is to relieve the parties from costly litigation and help ease congested court dockets. Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (C.A.2), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L. Ed.2d 618, dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). The plaintiff protests that there are indications that arbitration will not be quickly available to the parties in this instance, and that in any event, the arbitration process is inappropriate because the arbitrator lacks the equitable injunctive powers necessary for complete relief.

 The Court notes that while plaintiff's arguments may have merit, the action taken in staying the proceedings pending arbitration does not relieve the Court of its jurisdiction, but provides the opportunity to achieve the objectives stated in *Robert Lawrence Company, supra*. However, in retaining jurisdiction over this matter the Court thereby insures that plaintiff will receive any relief to which it may be enti-

tled, and that the arbitration proceedings are conducted within a reasonable period of time, thus preventing any undue prejudice of plaintiff's rights by virtue of delay. See Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Division, 315 F.2d 538 (C.A.4 1963); Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440 (C.A.2 1964).

## III. *Conclusion*

In accordance with the aforegoing, the defendants' Motion to Stay the Proceedings in this action Pending Arbitration was granted, with the proviso that said arbitration proceedings be completed within sixty days from the date of the Court's Order. The Court retained jurisdiction over the action pending completion of arbitration within the sixty-day period and submission of the award to the Court.