Mr. Justice Bradley
delivered the opinion of the court:
These several causes, consolidated by consent decree were heard together, and were brought here by appeal from the final decree settling and adjusting the rights of the several respective parties. The suits were instituted by the complainants to enforce mechanics’ liens against the land and improvements described in the proceedings. Other mechanics’ lien claimants were admitted as co-complainants upon petition. The land was sold under a decree passed with the consent of all parties. A certain portion of the proceeds of sale were brought into court pursuant to the decree, to await the ultimate result of the suits and the balance was distributed.
*586 By an agreed statement of facts filed and used as evidence in the consolidated causes and by the matters admitted in the pleadings it appears that, prior to the 28th day of February, 1887, the title to the land described in the proceedings was in the Howard University; that defendant Ross owned a valuable leasehold interest in it, and that on that day defendant Waldron contracted to purchase the land from Ross for $7,211, and Ross agreed to make advances for building purposes to the amount of $6,713.92. Ross conveyed his leasehold interest to Waldron, caused a deed of the land to be made to Waldron direct from the Howard University, and Waldron executed his promissory note payable to the order of Ross for $13,925, payable one year after date, with interest at six per centum per annum, payable quarterly. The deed and deed of trust were immediately recorded. The times and amounts of the advances were fixed by a written agreement of the same date which provided also for the' release of certain of the lots embraced in the deed of trust prior to payment in full of the note, upon specified terms of payment.
The advances under this agreement were to be made in cash. The agreement was not recorded.
After the title was acquired by Waldron, Ross agreed to make further advances of $100 on each lot to the amount of $2,200, and Waldron, on March 2, 1887, executed another deed of trust of the land to secure his promissory note for that amount payable one year after date with interest. This trust was immediately recorded, but nothing appeared of record to indicate that the note secured represented advances to be made. Both of these deeds of trust were recorded before the commencement of the construction of the buildings subsequently erected, with reference to which the mechanics’ liens were filed, and are sought to be enforced by these suits.
Some time later, and after the buildings were in course of erection, Ross agreed to make a further advance of $900 to complete the houses. This was secured by a promissory note, and a deed of trust of one .of the sub-lots. The mechanics’ *587 liens were released as to this lot, and there is now no controversy over the distribution of the portion of the fund realized from its sale.
It is not claimed that the complainants had any actual knowledge of the deeds of trust put upon the property before the beginning of the work upon the buildings, and they were ignorant of the fact that the promissory notes given, to any extent represented advances to be made, or that there was any agreement to make advances.
Ross, in good faith, under his contract with Waldron, advanced the whole amount covered by the several notes, and exceeded the amount by more than $100. The amount of the advance agreed to be made was $9,813.92. Of this sum $7,260 was advanced in cash, and the balance in material, agreed to be and actually accepted by Waldron as cash.
All of these advances of cash, or material, were made upon the several lots under the agreement before any of the notices of lien were filed against the lots respectively chargeable thereby.
On Nov. 14, 1887, before maturity, the notes for $13,924.92 and $2,200 were indorsed and delivered for full value, bona fide, without notice of any equities affecting the security to the defendant John Miller.
The decree of the special term gave priority of the lien to the two trusts for $13,925, and $2,200, respectively, awarding satisfaction thereof out of the proceeds of sale upon the terms specified in the agreement between Ross and Waldron relating to releases under the first trust, and as to the $2,200 note by charging each lot with the sum of $100 and interest from the date of the note.
From this decree the complainants and Ross appealed. The latter, however, has made no point against the decree at the hearing or in his brief, and it is assumed that he is satisfied with the decree and has abandoned his appeal.
The complainants claim that the decree is erroneous because it gives priority to advances made under a contract that had no consideration to support it, and because a portion *588 of the advances made were not in cash but in materials. The claim of want of consideration is based upon the assertion that the advances were at the option of Ross, and that he was not bound to make them. The fact is, however, that the promissory notes representing the advances agreed upon were made, and the deeds of trust to secure their payment were executed, and both notes and deeds were delivered to Ross. We are of opinion that the consideration to support the contract to make the advances was ample.
The complainants concede that a mortgage may be given to secure future advances, and that such a mortgage is valid if the mortgagee is under a legal obligation to make the advances. This has been settled in this jurisdiction certainly since the decision of Shirras vs. Craig, 7 Cranch, 34. It is sufficient if the mortgage or deed of trust upon its face purports to secure the payment of a specified amount, and the actual agreement, or the fact that it is given to secure advances to be made in the future, need not be expressed in it. In the case just cited, Marshall Ch. J., remarks: “ It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt, of £2°,000 sterling due to all mortgagees. It was really intended to secure different sums, due at the time to particular mortgagees, advances afterwards to be made, and liabilities to be incurred to an uncertain amount.” * * * After remarking that such a transaction must sustain a rigorous examination, he adds: “ But if upon investigation the real transaction shall appear to be fair though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation.” Lawrence vs. Tucker, 23 How., 14.
There can be no pretence that the complainants were misled or deceived. They do not claim to have known, or that they had any notice that the deeds of trust were in fact given in part to secure advances to be made. They were constructively notified by the record that the land upon which they *589 put their labor and material was subject to the burden of these two trusts, and the variance between the indebtedness described as existing and the actual fact adds no force or equity to the complainants’ suit.
It is contended by the complainants that to the extent that the secured notes represent material furnished by Ross, he is not entitled to priority because his agreement with Waldron was for cash, and that for materials furnished he must be relegated to the rights conferred by the mechanics’ lien statute. If the agreement originally made for advances had been in fact for materials instead of cash, although represented by a promissory note, the agreement would have been valid, and Ross would have been entitled to priority over the mechanics’ liens. Brooks vs. Lester, 36 Md., 65.
If the adverse claimants were junior mortgagees, either ignorant or fully informed of the actual contract, it could not be seriously claimed that they would be in any position to controvert the right of Ross to his whole security unimpaired, in view of the fact that in good faith he had furnished full value' for the notes in money and materials before their security was recorded. In what better position are the complainants? What talismanic right can they claim either under the statute, or under the general principles of equity by reason of being the holders of mechanics’ liens? Their right is purely a statutory one. It is in derogation of the common law, and in some respects it is plainly in violation of the principles of equity.
There can exist no. reason why any larger right outside of those conferred by the statute should be attributed to or exercised by the mechanics’ lien holder, than those recognized in equity as its subjects.
The right to substitute materials in the place and stead of cash was plainly within the exercise of the parties to the .agreement. If they so treated the materials furnished, the lien holders cannot controvert the validity of the act if they are to be subrogated to Waldron’s contract.
To support a superior equity to that of Waldron, or of Ross *590 they must show that they have been mislead, deceived and injured. This they have not done. It claimed that under the law their liens relate back to the beginning of the work and that although no lien was in existence at the time when the materials were furnished, and the right might never be exercised by filing the requisite notices, yet with reference to a possible lien it was the duty of .Ross to comply strictly with his agreement, and that the variation from it by contract subsequent was subordinate to the complainants’ statutory right.
The contention made is unsound and is not supported by' any principle of equity. The statute confers no such superior right of inquisition and abrogation.' Under it the lien holder takes, subject to all deeds of trust that attach to the premises prior to the commencement of the work upon the buildings, whether the deed of trust is given to secure a note for advances entirely in money, or in materials, or partly in money, and partly in materials, and whether in good faith between the parties to the agreement, the mechanic not being misled, money is substituted for material or vice versa.
“The statute confers upon him no special prerogative to transcend the most familiar principles of the law and to claim privileges which are denied to all other citizens in the determination of their contract rights.” Schroeder vs. Galland, 134 Pa., 277.
Under the arrangement made between Ross and Waldron in the substitution of materials for cash the complainants were benefited, inasmuch as the materials went into the buildings and enhanced the security, whereas if the money had been advanced it might have been diverted from the proper direction. Be this as it may, and without reference to the fact that Miller became the owner of the notes for full value before any lien notice was filed, in good faith, and before maturity, we are of opinion that the special term was right in giving priority to the lien of the deeds of trust in question, and the decree of that court is affirmed with costs.