# THE UNITED STATES, TO THE USE OF THE STANDARD OIL CO.,

*v.*

# THE CITY TRUST, SAFE DEPOSIT & SECURITY CO.

---

GOVERNMENT CONTRACTORS' BONDS: SUBCONTRACTORS AND MATERIAL-MEN; MECHANIC LIEN LAW; MATERIALS.

1. The practical effect of the act of Congress of August 13, 1894, requiring every contractor for public work to give a bond to secure payment to all persons supplying the contractor with "labor and materials in the prosecution of the work provided for in such contract," is to confer a special lien in favor of such persons and to substitute the bond in the place of the building upon which the lien is charged; *following* Marble Co. v. Burgdorf, 13 App. D. C. 506.

2. The association by a contractor for public work who has given a bond as required by the act of Congress of August 13, 1894, of another person with him in the performance of the contract, is not an assignment of the contract, nor does it make the firm so constituted subcontractors so as to take those furnishing materials to the firm out of the protection of the statute; *following* Marble Co. v. Burgdorf, 13 App. D. C. 506.

3. While mechanic lien laws are, in general, to be liberally construed, it is a reasonable construction of such statutes, creating liabilities that did not exist before, that they are limited to such persons and purposes as come directly, or by necessary implication, within

their granting words; *following* Marble Co. v. Burgdorf, 13 App. D. C. 506.

4. Lubricating oils furnished and used in operating a dredge by a government contractor for dredging work, who has given a bond as required by the act of Congress of August 13, 1894, to secure payment to all persons supplying him with "labor and materials in the prosecution of the work provided for" in his contract, are not materials supplied in the prosecution of the work, within the meaning of that act.

5. *Quære,* whether, under all circumstances, the materials covered by the act of Congress of August 13, 1894, requiring every government contractor to give a bond to secure payment to all persons supplying him with "labor and materials in the prosecution of the work" under his contract, are to be strictly limited to such things as visibly enter into and form a part of the structure contracted for.

No. 1269.   Submitted February 10, 1903.   Decided March 3, 1903.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on an agreed statement of facts in an action, appealed to that court from a justice of the peace, on a government contractor's bond.                                                            *Affirmed.*

The COURT in the opinion stated the case as follows:

This suit was begun in the justice's court in the name of the United States to the use of the Standard Oil Company to recover upon a contractor's bond the sum of $63.08, for materials furnished to said contractor in the performance of his contract.   Judgment was recovered by the plaintiff for the amount claimed, but on appeal to the Supreme Court of the District, judgment was rendered for the defendant; and this appeal is therefrom.   It appears from the agreed statement of facts on which the case was submitted below, that on September 7, 1899, a contract was entered into by the United States with A. M. Clegg, whereby the latter undertook to remove certain material from a part of the channel of the Potomac river by dredging; work to be commenced September 11, 1899, and completed before September 1, 1900.

As required by law, Clegg gave a bond, with the defendant as surety to secure the performance of the contract, which bond contained the following recital: Said Clegg " shall promptly make full payments to all persons supplying him labor or materials in the prosecution of the work provided for in said contract." Clegg subsequently entered into copartnership with M. A. Dugan, under the style of M. A. Dugan & Co., and the said partnership carried on the work provided for in the contract from December 1 to December 23, 1899, when the same ceased and the dredge was removed. No more work having been done, the United States annulled the contract in June, 1900. Before the contract was signed, Clegg made application to the Standard Oil Company for a supply of lubricating oil to M. A. Dugan & Co., for use in operating their dredge for one year. A contract was made specifying quality, quantity, and prices, and pursuant thereto oil was delivered upon said dredge, on December 5 and 12, 1899, of the value of $63.08. Two-fifths of said oil was used in operating the dredge between December 5 and December 23, when its operation ceased. The remainder was not returned and none was paid for.

*Mr. Charles H. Merillat* for the appellant:

1. " Materials," within the meaning of the act of Congress of August 13, 1894, and the bond given in compliance therewith, and bond, is a word of broad, general meaning, intended to cover all the articles or things a contractor may find necessary to enable him to " prosecute " — that is, carry on or fulfill — his contract, and which he may procure some one to " furnish " or " supply " him. The language of the statute is broad and general in its terms. The statute is remedial, and is to be liberally construed in aid of the evident intent of Congress and its beneficent purpose — full protection to laborers and materialmen, with the incidental result of benefiting the Government through better credit of the contractor. *U. S. to Use of Anniston Pipe Co.* v. *National Surety Co.,* 92 Fed. Rep. 549; *United States* v. *Rundle,* 100

Fed. Rep. 400; *Vermont Marble Co.* v. *Burgdorf,* 13 App. D. C. 506–521; *Mining Co.* v. *Cullins,* 104 U. S. 176; *Willamette Falls Mining Co.* v. *Remick,* 1 Oreg. 169; *Giant Powder Co.* v. *Oregon Pacific Ry. Co.,* 42 Fed. Rep. 475; *Central Trust Co.* v. *Sheffield & Co.,* 42 Fed. Rep. 106–109; *Andrews* v. *St. Louis Tunnel Co.,* 16 Mo. App. 299. In the following cases powder for blasting, lumber for ·a contiguous shop, candles, etc., were held to give a lien: *Hazard Powder Co.* v. *Byrnes,* 12 App. Pr. 469, and 21 Abb. Pr. 189; *Keystone Min. Co.* v. *Gallagher,* 5 Colo. 28; *Rapauno Chem. Co.* v. *Greenfield,* 59 Mo. App. 6; *Powder Co.* v. *Flume Co.,* 20 Pac. Rep. 4; *Burke* v. *Brown,* 10 Tex. Civ. App. 298. In the following, liens were given for hauling to buildings or mills: *Hill* v. *Newman,* 38 Pa. St. 151; *In re Hope Mining Co.,* 1 Sawy. (U. S.) 710; *McKeen* v. *Haselline,* 46 Minn. 426; *Perry* v. *Murphy,* 56 Minn. 306; *Seider's Appeal,* 10 Wright (Ohio), 57. If the tearing down of a building be a necessary part of the work required for the performance of the contract to remodel and repair, and so become a constituent of the intended improvement, the right to a lien therefor clearly exists. Phillips on Mech. Liens, 295; *Haskell* v. *Gallagher,* 20 Ind. App. 225; *Vandergrift* v. *Formans,* 83 Pa. St. 127. Fuel for use in drilling oil wells held materials furnished. See also *Lane* v. *State,* 14 Ind. App. 573; *Conn* v. *State,* 125 Ind. 518; *Lyman* v. *Lincoln,* 38 Neb. 794; *Kauffmann* v. *Cooper,* 46 Neb. 645; *Korsemeyer* v. *McClay,* 43 Neb. 649; *Hickman* v. *Layne,* 47 Neb. 177; *Perry* v. *Murphy,* 56 Minn. 306; *Callahan* v. *Dunn,* 78 Cal. 368. Hoisting apparatus: *Dixon* v. *La Farge,* 1 E. D. Smith, 722, and *Tizzard* v. *H.,* 3 Phil. 261. Cook for lumbermen: *Winslow* v. *Urquhart,* 39 Wis. 268. Work on a blacksmith's tools used in developing a mine is work on the mine: *Malone* v. *Big Flat Co.,* 76 Cal. 584; *Selden* v. *Meeks,* 17 Cal. 130 — a house material — Field, C. J., participating.

2. Statutes should be read according to the natural and most obvious import of the language and not given subtle constructions. They should be applied in the light of the pur-

pose and intent of the legislature. Words should not be interpolated into them unless plainly necessary. Statutes like that under consideration are highly remedial and should be liberally construed in advancement of the remedy given. The bond was intended for protection of materialmen, and construction of it liberally is in line with its policy in that regard and also subserves the ends of the Government, securing better work by means of the added credit and standing given the contractors. *Baker* v. *Bryan,* 64 Iowa, 561. Furthermore, in this case there was a specific requirement that the dredge and machinery should be kept at all times in good working condition, the contract being incorporated into the bond (*Peake* v. *United States,* 16 App. D. C. 415; *Young* v. *Young,* 21 Ind. App. 575), and the lubricants obviously being necessary thereto, so that the surety specially obligated itself as to the matters now in suit.

3. It is not necessary to show the lubricants actually were used on the Government contract. It is sufficient to show, in the language of the statute, that they were furnished or supplied the contractor in the prosecution of the work. *Steffes* v. *Lemke,* 40 Minn. 27; *Rundle* v. *United States,* 100 Fed. Rep. 400; *Kaufmann* v. *Cooper,* 46 Neb. 645; *Hinchman* v. *Graham,* 1 Serg. & Rawle (Pa.), 169. See also *Greenway* v. *Turner,* 4 Md. 296; Encyc. of Law (2d ed.), v. 15, pp. 41 and 187; *Hawes* v. *Reliance Co.,* 46 Minn. 44; *Chicago Art Well Co.* v. *Cordy,* 60 Ill. 77; *Huttig Bros.* v. *Denny,* 6 Wash. 122; *Burns* v. *Sewell,* 48 Minn. 425; *Totten* v. *Muncie Nail Co.,* 148 Ind. 372; *Baker* v. *Bryan,* 64 Iowa, 561; *Combs* v. *Jackson,* 72 N. W. Rep. 565. The appellant would have been entitled to hold the surety if, in the language of the law, he had "furnished" or "supplied" "material in the prosecution of the work provided for in the contract," even though the items had been included in a general or current running account with the contractor. This precise point was passed on in *Clark* v. *Huey,* 12 Ind. App. 573, arising under the Indiana road law, which provides that the contractor shall give bond for prompt payment of all debts incurred by him in the prosecution of such work, including

labor and materials furnished. The materialman had a running current account with the contractor at the time articles were furnished the contractor for use on some county road work, and it was held, the contractor failing to pay, that the bond was liable for the items furnished for the county work.

Counsel for appellee have relied largely on the case of *Sica* v. *Kimpland,* 93 Fed. Rep. 403, but that case has no bearing on the present case, as it was decided entirely on the ground that it was a private outside agreement between contractors, laborers, and a boarding-house keeper; on the *Sabine Case,* which is a suit for freight charges, and clearly is not applicable, and on the *Morgan Case,* 111 Fed. Rep. 474. This last case, however, is within the distinction made by Justice Deady in 42 Fed. Rep., *supra,* the lubricators being a part of the contractor's plant, and not oils or other stuff that kept the machinery in operation. That decision, furthermore, is an instance of a narrow and illiberal construction of the present law, and one which counsel believe will not be followed by the courts generally. It would make the statute a burden and a trap instead of a blessing, and give rise to endless quibbles, and compel materialmen to search into the uses to which their materials were to be put, and then to consult a lawyer each time before selling.

*U. S. to Use of McLaughlin* v. *Morgan,* 111 Fed. Rep. 474, reversed in part in later case of *American Surety Co.* v. *Lawrenceville Cement Co.,* 110 Fed. Rep. 717. Both are in error in holding mechanic's lien statutes to be strictly construed and limited.

Counsel for the appellant submit that the true rule and test in the present case is, articles being such as were reasonably necessary to the work and *bona fide* furnished for it, not to draw constantly shadowing and shifting lines as to what are materials, but to follow the rule laid down by the court in *Marble Co.* v. *Burgdorf,* 13 App. D. C. 521, and hold the surety liable for whatever articles were furnished the contractor on or in the work which the surety bonded and guaranteed. This test likewise was in effect set forth in

the decision, last term, by this court in *Smoot* v. *Fidelity Co.,* affirmed by the United States Supreme Court.

*Mr. Henry W. Sohon* and *Mr. Fred. G. Coldren* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The bond was given in compliance with the act approved August 13, 1894, to secure payment to all persons supplying a contractor with the United States " labor and materials in the prosecution of the work provided for in such contract."

" The practical effect of the statute," as we have had occasion heretofore to say, " is to confer a special lien in favor of such persons and to substitute this bond in the place of the public building upon which that lien is charged. The bond is not, therefore, to be considered as if a special private offer of guaranty by the sureties to particular persons from whom their principal may solicit credit in the procurement of labor and materials, but as the performance of a precedent statutory condition of his contract, intended for the benefit of all persons whomsoever, that, relying upon the provisions of the statute, shall have supplied him labor and material in its performance. *Marble Co.* v. *Burgdorf,* 13 App. D. C. 506, 519.

Under the doctrine in that case the association of Dugan with Clegg in the performance of the contract did not make M. A. Dugan & Co. subcontractors so as to take those furnishing materials to them out of the protection of the statute. Consequently, if the surety on Clegg's bond would be liable for the price of the oil had it been furnished to him and used by him alone, in a like manner that liability is not taken away by his joining Dugan with him in the performance of his contract. That act was neither an assignment of the contract nor the introduction of a subcontractor. *Marble Co.* v. *Burgdorf,* 13 App. D. C. 506, 522.

It was also said in that case that, while lien laws are, in general, liberally construed, yet " it is a reasonable rule of construction of such statutes creating liabilities that did not

before exist, that they are limited to such persons and purposes as come directly, or by necessary implication, within their granting words."

It remains to consider whether the lubricating oils furnished by the plaintiff, and used in the operation of the dredge by M. A. Dugan & Co., were materials supplied in the prosecution of the work within the meaning of the act of Congress.

We concur in the conclusion of the court below that they were not. The language of the act, considered in a liberal view of its purposes, does not warrant its application broadly, as contended by the appellant, " to all articles or things *bona fide* furnished to enable the contractor to fulfill his contract."

The dredge itself, though costing more, perhaps, than the gross price of the contract, and capable of use in other similar works, public and private, would come under the class of things furnished to enable the contractor to fulfill his contract, for the contract could not, apparently, be performed without it. The same may be said of the various tools used by the laborers of a contractor in the construction of a public work. These are necessary to accomplish the work, and yet are commonly excluded from the lien of all statutes of the same general nature, where the security is limited to labor and materials only. If the dredge or tools and appliances of a contractor are not materials in the sense used in the statute, then, for as strong a reason at least, the oil used for their preservation cannot be so considered.

This view of the meaning of the statute accords with the construction that has been given it in the few decisions of the courts of the United States that have been called to our attention. *U. S., use, etc.,* v. *Morgan,* 111 Fed. Rep. 474; *S. C.* in Circuit Court of Appeals, *sub nom. Thos. Laughlin & Co.* v. *Am. Surety Co.,* 114 Fed. Rep. 627; *U. S., use, etc.,* v. *Hyatt,* 92 Fed. Rep. (C. C. A. 5th Circuit) 442.

To review the many cases in the State courts, cited on the brief of the appellant, would be an unprofitable consumption of time, for it would require the recital of the particular State statutes involved in them respectively. It is sufficient

to say, that in some of these in which an apparently different conclusion is announced, the statute involved differs materially from the act of Congress.

We will refer to one State decision, however, in which the construction of a statute, closely resembling the act of Congress, accords with our view of the latter: *Basshor* v. *B. & O. RR. Co.,* 65 Md. 99, 103. The lien sought in that case was a debt incurred by contractors in the purchase of machinery for crushing stone used in the construction of a bridge, as well as of appliances for delivering the artificial stone at the place of construction. The lien was denied, the court saying: " This seems to us to be stretching the lien law rather beyond anything warranted either by the letter or the spirit of the law. When the law says the materialman shall have a lien for all materials furnished for, or used in and about, the construction of bridges, it means such materials as ordinarily enter into or are used in the construction of bridges, and which are fairly within the express or implied terms of the contract between the owner and the contractor. It does not mean machinery that may be used for the manufacture of the materials themselves. * * * The machinery thus used is the plant of the contractor, and can in no sense be said to be material furnished or used in building the bridges. The mechanics' lien law is, it is true, to be liberally construed, but courts have no power to extend it to cases beyond the obvious designs and plain requirements of the statute."

The necessary disposition of this case does not involve a determination of the question, whether under all circumstances, the materials covered by the lien of the statute are to be strictly limited to such things as visibly enter into and form a part of the structure contracted for. Questions of this kind, in respect of either materials or labor, will doubtless come up in future cases, and we shall not embarrass their determination by anticipation.

The judgment appealed from was rightly entered upon the agreed facts, and will be affirmed, with costs. It is so ordered.                                          *Affirmed.*