WACO SCAFFOLD & SHORING CO., INC.,
Appellant,

v.

425 EY.E STREET ASSOCIATES, a Mary-
land Limited Partnership, Appel-
lee (two cases).

MARYLAND STEEL ERECTORS, INC.,
Appellant,

v.

425 EYE STREET ASSOCIATES, a Mary-
land Limited Partnership, Appellee.

ITT–GRINNELL CORPORATION,
Appellant,

v.

425 EYE STREET ASSOCIATES, a Mary-
land Limited Partnership, Appellee.

Nos. 9227–9229 and 9336.

District of Columbia Court of Appeals.

Argued Dec. 2, 1975.

Decided April 8, 1976.

John Lindow, with whom Richard A. Mehler, Washington, D. C., was on the brief for Waco Scaffold & Shoring Co., Inc.

H. Michael Rankin, Oxon Hill, Md., with whom Raymond J. McDonough, Oxon Hill, Md., was on the brief for Maryland Steel Erectors, Inc.

Daniel V. S. McEvily, Washington, D. C., with whom John L. Hamilton and Nicholas D. Ward, Washington, D. C., were on the brief for ITT–Grinnell Corp.

Alvin Friedman for appellee 425 Eye Street Associates. Lawrence J. Ochs, Washington, D. C., also entered an appearance for appellee.

Before KELLY, KERN and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Two issues are before us on this appeal: (1) the priority of mechanics' liens held by appellants Waco Scaffold & Shoring Co. [Waco], ITT–Grinnell [ITT] and Maryland Steel Erectors, Inc. [Maryland Steel] as against a construction lender's deed of trust securing a loan made to the predecessor of appellee 425 Eye Street Associates [Associates], and (2) the propriety of the trial court's judgment in favor of Associates on Waco's claim for damages in *quantum meruit*.[1]

The property in issue is Lot 57, Square 516 in the District of Columbia, commonly known as 425 Eye Street N.W. The trial court's findings of fact made in response to appellee's motion to dismiss indicate that on October 8, 1971, a deed of trust was recorded as to this property to secure a promissory note for $9.4 million held by Girard Bank and Security National Bank the construction money lenders.[2] Appellants Maryland Steel, ITT and Waco, filed notices of intent to hold a lien on the property[3] on September 7, 1972, October 4, 1972, and March 15, 1973, respectively. The trial court found that sometime before these notices were filed, some $5,458,984 had been advanced by the construction money lenders to appellee or its predecessor in interest.

Appellants brought suit[4] to enforce their liens in September 1973, arguing that mechanics' liens take priority over all other encumbrances except purchase-money mortgages or deeds of trust, and that mechanics' liens attach at the commencement of the work. *See Deland v. Wagner,* 62 App.D.C. 54, 64 F.2d 552 (1933); D.C. Code 1973, § 38–109. Appellant Maryland Steel alleged that it commenced work on the property in August 1971, before the deed of trust securing the construction money lender's loan was recorded, while appellants ITT and Waco claimed they commenced work in February 1972, after

---

1. We have examined appellants' other assertions of error and find them to be without merit.

2. The note was executed by Chester Arthur Corporation, the fee owner at the time, and provided for a $9,400,000 loan to Chester Arthur for construction of an office building on the property. Chester Arthur transferred title to the property to appellee on September 14, 1972.

3. D.C.Code 1973, § 38–102.

4. Appellant Maryland Steel filed suit first, naming as defendants the Chester Arthur Corporation, appellee Associates, National Realty & Construction Co., Inc., appellant ITT and others. ITT then cross-claimed against appellee and others and counter-claimed against Maryland Steel. Waco intervened as a defendant in the action brought by Maryland Steel, and then cross-claimed

recordation of the deed of trust.[5] The trial court found as a fact that each appellant had commenced work before filing its notice of lien.

The property in question was sold at a foreclosure sale on August 26, 1974, for $4,630,983, an amount less than the total amount advanced by the construction money lender. Appellee moved to dismiss on September 16, 1974, on the ground that the mechanics' liens which were the subject of the suit had been eliminated by the foreclosure sale at a price less than the total advances made prior to the commencement of work. This motion was granted on December 3, 1974, and appellants brought this appeal.

 The issue before us, then, is the construction of D.C.Code 1973, § 38–109, which establishes the priorities accorded to various liens and encumbrances. Specifically, we must determine the relative priority of interests between a construction money lender who records its deed of trust to secure a construction loan *after* the commencement of work on the property by construction companies, and the construction company-mechanics' lienor who commences work *prior to* the construction lender's recordation but files a notice of intent to hold a lien *after* the lender has advanced money.[6]

The relevant statute, § 38–109, provides in part:

> The [mechanics'] lien hereby given shall be preferred to all . . . deeds

of trusts, liens, and incumbrances which attach upon the building or ground affected by said lien subsequently to the commencement of the work upon the building, . . . except that nothing herein shall affect the priority of a mortgage or deed of trust given to secure the purchase money for the land, if the same be recorded within ten days from the date of the acknowledgment thereof. When a mortgage or deed of trust of real estate securing advances thereafter to be made for the purpose of erecting buildings and improvements thereon is given, . . . the [mechanics'] lien hereinbefore authorized shall have priority to all advances made after the filing of said notices of lien, and the lien shall attach to the right, title, and interest of the owner in said building and land to the extent of all advances which shall have become due after the filing of such notice of such lien

. . . . .

This statute was analyzed in our opinion in *Guardian Federal Savings & Loan Association v. Suskind,* D.C.App., 265 A.2d 295 (1970), a case that dealt with the priority of a purchase-money deed of trust within the context of a supplementary agreement. We stated there at 297:

> In the absence of the subordination agreement, D.C.Code 1967, § 38–109 would establish the following priorities to the foreclosure sale proceeds: first, the purchase-money deed of trust; sec-

---

against appellee Associates and National Realty & Construction Co., Inc.

5. The trial court did not make specific findings of fact concerning the dates on which appellant commenced work. Because of our disposition of the case we need not determine the exact dates when work commenced.

6. It is apparent by our framing of this issue that we reject the proposition forwarded by appellants ITT and Waco, that a mechanics' lien takes precedence over a recorded deed of trust even though the mechanics' lienor did not commence work until *after* the construction lender recorded its deed of trust. Section 38–109 clearly provides that the mechanics' lien "shall be preferred to all judg-

ments, mortgages, deeds of trusts, liens, and incumbrances which attach upon the building or ground affected by said lien *subsequently* to the commencement of the work upon the building." [Emphasis added.] Since neither ITT nor Waco claims to have commenced work before the construction money lenders recorded their deed of trust, their mechanics' liens are subordinate to the construction lenders' interest regardless of our resolution of the issue stated above. We also reject the assertion that the recording of mechanics' liens by ITT and Waco relates back to the commencement of work by Maryland Steel for purposes of determining priority of liens.

ond, the construction loan deed of trust to the extent of disbursements prior to the filing date of the mechanics' liens; third, the mechanics' liens; and finally, the balance of the construction loan. [Footnote omitted.]

We agree that this is the proper interpretation of the statute at issue here, for it comports with the plain meaning of the words used. This construction also supplies the simplest resolution to the problem of the two competing sets of priorities created in the statute by treating the second set of priorities as a modification of the priorities described generally in the first sentence. If Congress had intended that the second set of priorities take effect only if no construction work had commenced, it would have included this condition in the statute. Since it did not, we must construe the statute as a whole and reconcile the two provisions. *See* 2A Sutherland, Statutory Construction § 46.05 (4th ed. 1973). This is apparently the view taken by the trial court, and under the circumstances his dismissal of appellants' claims was correct.

■ The three appellants here all filed their notices of intent to hold a lien *after* the construction money lender had received and recorded a deed of trust securing its loan and had advanced significant sums, *viz.*, $5,458,984, for the construction of the building. Consequently the claims of the construction money lenders up to the amount of the advances made before appellants filed notices took priority over appellants' mechanics' liens. The property in issue was purchased at the foreclosure sale by Union-America Mortgage and Equity Trust, successor to Girard Bank and Security National Bank and the holder of the promissory note secured by the deed of trust. Since the purchase price of the

property was less than the amount of advances made under the loan, which constituted a superior interest, appellants' liens were extinguished and their claims were properly dismissed. *See Rosslyn Steel & Cement Co. v. Etchison*, 61 App.D.C. 43, 57 F.2d 409, *cert. denied*, 287 U.S. 614, 53 S. Ct. 17, 77 L.Ed. 534 (1932).

■ Appellant Waco also argues that the trial court committed error in granting judgment in favor of appellee Associates on Waco's claim for damages in *quantum meruit*. After considering the evidence presented at a hearing on this claim, the trial court found that appellant had not shown any negotiations between the parties or any circumstances suggesting "either a contractual or other implicit understanding by the parties." Accordingly, the court concluded that appellant "failed to establish by convincing proof a basis for relief."[7]

There are four elements of a claim in *quantum meruit*:

(1) valuable services being rendered;

(2) for the person sought to be charged;

(3) which services were accepted by the person sought to be charged, used and enjoyed by him or her; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, expected to be paid by him or her. . . . [*In Re Rich*, D.C.App., 337 A.2d 764, 766 (1975).]

The trial court's order indicates that there was an inadequate showing on the fourth element of Waco's claim, *viz.*, appellee's knowledge of appellant's expectation of payment, since the court found there was no showing of an understanding between the parties. Given the scarcity of testimo-

---

7. Appellant Waco alleges that this statement reveals error on the part of the trial court in applying an improper standard of "convincing proof" rather than the customary "preponderance of the evidence" standard. While the trial court's use of this language is inappropriate, we are not persuaded that the court employed an improper standard of proof in reaching its conclusion. Rather, we believe this phrase was an attempt to express the fact that the court was not *convinced* by appellant's evidence, and of course this is not inconsistent wtih the conclusion that appellant failed to prove its claim by a preponderance of the evidence.

ny in support of this claim [8] we cannot conclude that the trial court's ruling was "plainly wrong," and consequently we must affirm. D.C.Code 1973, § 17–305(a).

*So ordered.*

8. Waco presented one witness, the local manager for Waco, who identified several invoices sent to National Realty & Construction Company, Inc., one of the original defendants in the case, pursuant to a contract for materials and services rendered by Waco on the Chester Arthur Building. The bulk of the invoices (all but $3,874 of a $42,231 claim) were for material and services provided before September 14, 1972, when the Chester Arthur Corporation transferred title to the building to appellee Associates. There was no evidence presented of any contract, oral or written, between Waco and Associates, or of any dealings between these parties.

Waco also pointed to an apparent admission in one of appellee's responsive memoranda, wherein appellee stated that "upon assuming ownership of the building and improvements in September, 1972 defendant, 425 I Street Associates, continued to employ cross claim defendant, Waco." However, the following sentence in this memorandum claimed that appellee paid appellant Waco for all the labor and material contracted for after appellee assumed ownership of the building, and the trial court could have accepted this explanation of the alleged admission.