**ELECTRICAL EQUIPMENT COMPANY et al.**

v.

**SECURITY NATIONAL BANK et al.,
John W. Underwood and John P.
Cooney, Appellants.**

**No. 78–1159.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 23, 1979.

Decided Aug. 31, 1979.

William B. Beebe, Washington, D. C., with whom Richard S. Arfa, Washington, D. C., was on the brief, for appellants.

Ralph N. Albright, Jr., Washington, D. C., with whom Avis E. Black, Washington, D. C., was on the brief, for appellees.

Before WRIGHT, Chief Judge, ROBINSON, Circuit Judge, and RICHEY *, United States District Judge for the District of Columbia.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal is the last vestige of protracted legal disputations stemming from an ill-fated effort to construct an office building known as Columbia Plaza in Northwest Washington, D. C.,[1] Insulation Contractors, Inc. (Insulation), brought this suit to recover damages from the trustees under a deed of trust on the Columbia Plaza property securing a construction loan from Royal National Bank (Royal) to the developers of the project, the Columbia Plaza Corporation (Columbia). The gist of Insulation's complaint is that the trustees wrongfully failed to satisfy Insulation's mechanic's lien of $46,179 from the proceeds of a foreclosure sale conducted under the terms of the deed of trust. On cross-motions for summary judgment, the District Court entered judgment for Insulation.[2] For reasons shortly to be stated, we reverse.

## I

The pertinent facts have been settled, and the legal issue accurately framed, by stipulation of the parties.[3] Royal loaned Columbia $13 million to finance the construction of the Columbia Plaza office building.[4] The loan was evidenced by promissory notes and secured by a recorded first deed of trust. In accordance with the deed of trust, the loan proceeds were parceled out to Columbia in the form of progress payments as construction proceeded.

Royal and Columbia eventually agreed that the principal of the loan, or so much thereof as might be advanced by March 30, 1972, would be repaid on or before that date, and that interest would be paid monthly.[5] Columbia defaulted on these obligations by failing to repay the principal by March 30 and by terminating interest payments at that time.[6] Royal nevertheless continued to make advances on the loan, and the last advance of $133,000 occurred on July 27, 1972.[7] Just prior to that advance, on July 24, 1972, Insulation filed a notice of mechanic's lien claiming $46,179, plus interest, for labor and materials devoted to the Columbia Plaza building.[8]

On October 20, 1972, the trustees, at the bank's request, gave notice of foreclosure and on November 21, 1972, the property was sold, free and clear of mechanic's liens, for $13,657,695.[9] The trustees later paid over the entire net proceeds of the sale to the bank. Royal had made $12,866,996 in principal advances before Insulation filed notice of its lien, and $504,477 in unpaid interest accumulated on that principal be-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. This imbroglio is partially described in an earlier opinion of this court, *Columbia Plaza Corp. v. Security Nat'l Bank*, 173 U.S.App.D.C. 403, 525 F.2d 620 (1975).

2. *Electrical Equip. Co. v. Security Nat'l Bank*, C.A.No. 2–73 (D.D.C. Dec. 20, 1977), Appendix (App.) 501.

3. App. 290–418.

4. Actually, Royal loaned Columbia $2.3 million in August, 1970, and an additional $10.7 million the following November. On November 20, 1970, these loans were consolidated and secured by a single first deed of trust. App. 329, 344, 357.

5. App. 372.

6. See App. 414, 427.

7. App. 291.

8. App. 291. See D.C.Code § 38–102 (1973).

9. App. 291–292. The figure in text is the total of the proceeds from the sale. The price bid was $13,650,000. App. 291.

fore Insulation's filing.[10] It is rightly conceded by Insulation that Royal's entitlement to these sums, a total of $13,371,473, had priority over its mechanic's lien.[11] However, interest on the principal advances made before Insulation filed its notice continued to accrue until the foreclosure sale nearly three months later. By that time, even aside from Royal's advance of $133,000 after Insulation's filing and interest thereon,[12] the amount due Royal was $13,878,479, more than enough to exhaust the proceeds from the foreclosure sale.[13]

The question for decision is whether under the District of Columbia's mechanic's lien laws[14] Royal's claim to payment from the foreclosure proceeds of interest accruing after Insulation filed its notice on advances predating that filing[15] takes precedence over Insulation's mechanic's lien. The District Court, finding neither the statutory provisions nor the caselaw dispositive, relied

on the strong public policy of protecting mechanics' lienholders and entered judgment for Insulation.[16] Close examination of the language and purpose of controlling legislation, as construed in previous judicial decisions, constrains us to conclude that the District Court erred.

## II

In the District of Columbia, as elsewhere, the mechanic's lien is purely a creature of statute.[17] Like the rest of its essential features, the lien's relative priority *vis-a-vis* competing liens has been carefully defined by the legislature.[18] The District's priorities are staked out in Section 38–109 of its Code,[19] and to analysis of its relevant provisions we necessarily must first turn.

The first sentence of Section 38–109 specifies in pertinent part that "The [mechanic's] lien . . . shall be preferred to all

10. App. 291.

11. App. 292.

12. Insulation's lien clearly has priority over the last advance. See notes 26–27 *infra* and accompanying text.

13. App. 292.

14. So far as pertinent, discussed in Part II *infra*.

15. See App. 292–293.

16. *Electrical Equip. Co. v. Security Nat'l Bank,* *supra* note 2, at 2–4, App. 502–504.

17. *United States ex rel. Standard Oil Co. v. City Trust Safe Deposit & Sec. Co.,* 21 App.D.C. 369, 377 (1903); *United States ex rel. Vermont Marble Co. v. Burgdorf,* 13 App.D.C. 506, 518–519 (1898).

18. See D.C.Code § 38–109 (1973), quoted *infra* note 19.

19. In its entirety § 38–109 provides:
The lien hereby given [mechanic's lien] shall be preferred to all judgments, mortgages, deeds of trusts, liens, and incumbrances which attach upon the building or ground affected by said lien subsequently to the commencement of the work upon the building, as well as to conveyances executed, but

not recorded, before that time, to which recording is necessary, as to third persons; except that nothing herein shall affect the priority of a mortgage or deed of trust given to secure the purchase money for the land, if the same be recorded within ten days from the date of the acknowledgment thereof. When a mortgage or deed of trust of real estate securing advances thereafter to be made for the purpose of erecting buildings and improvements thereon is given, or when an owner of lands contracts with a builder for the sale of lots and the erection of buildings thereon, and agrees to advance moneys toward the erection of such buildings, the lien hereinbefore authorized shall have priority to all advances made after the filing of said notices of lien, and the lien shall attach to the right, title, and interest of the owner in said building and land to the extent of all advances which shall have become due after the filing of such notice of such lien, and shall attach to and be a lien on the right, title, and interest of the person so agreeing to purchase said land at the time of the filing of said notices of lien. When a building shall be erected or repaired by a lessee or tenant for life or years, or a person having an equitable estate or interest in such building or land on which it stands, the lien created by this act shall only extend to and cover the interest or estate of such lessee, tenant, or equitable owners.

judgments, mortgages, deeds of trust, liens, and incumbrances which attach upon the building or ground affected by said lien subsequently to commencement of the work upon the building . . . ."[20] To this general rule there is an exception, not applicable here, for promptly recorded purchase money mortgages and deeds of trust.[21] The second sentence of Section 38–109—of critical importance to this case—carves out a further exception:

> When a mortgage or deed of trust of real estate securing advances thereafter to be made for the purpose of erecting buildings and improvements thereon is given, . . . the [mechanic's] lien . . . shall have priority to all advances made after the filing of . . . notices of lien, and the lien shall attach to the right, title, and interest of the owner in said building and land to the extent of all advances which shall have become due after the filing of . . . notice of such lien . . . .[22]

Thus the broad scheme of Section 38–109 can readily be perceived:

> In the absence of [a] subordination agreement [§ 38–109] would establish the following priorities for the foreclosure sale

proceeds: first, the purchase-money deed of trust; second, the construction loan deed of trust to the extent of disbursements prior to the filing date of the mechanics' liens; third, the mechanics' liens; and finally, the balance of the construction loan.[23]

The first sentence of section 38–109 has long been interpreted as a grant of priority over mechanics' liens to security interests that attach before the commencement of work.[24] Though this principle must be deduced from the language of that sentence, the inference is a compelling one.[25] Thus, if Section 38–109 said no more, Royal's total claim would, by virtue of this sentence, plainly be superior to Insulation's mechanic's lien.

The second sentence of Section 38–109, however, modifies the set of priorities established in the first.[26] This qualifying provision deals precisely with the type of transaction Royal and Columbia entered into —future advances on a construction loan secured by a deed of trust. While the preeminence of advances made before notice of a mechanic's lien is publicly recorded is not affected, advances postdating the filing of the mechanic's lien are made inferior to

---

**20.** See note 19 *supra.* This priority obtains also over conveyances which are legally required for third-party purposes to be recorded but in fact are not. See note 19 *supra.*

**21.** See note 19 *supra.*

**22.** See note 19 *supra.* This exception extends also to a landowner contracting with a builder for the sale of lots and the erection of buildings thereon, and agreeing to advance monies toward such erection. See note 29 *supra.*

**23.** *Guardian Fed. Savs. & Loan Ass'n v. Suskind,* 265 A.2d 295, 297 (D.C.App. 1970).

**24.** *E. g., Deland v. Wagner,* 62 App.D.C. 54, 55, 64 F.2d 552, 553 (1933); *Rosslyn Steel & Cement Co. v. Etchison,* 61 App.D.C. 43, 57 F.2d 409, *cert. denied,* 287 U.S. 614, 53 S.Ct. 17, 77 L.Ed. 534 (1932); *Waco Scaffold & Shoring Co. v. 425 Eye St. Assocs.,* 355 A.2d 780, 782–783 & n.6 (D.C.App.1976); see *Richards v. Waldron,* 20 D.C. (9 Mackey) 585, 590 (1892) ("[u]nder [the mechanic's lien statute] the lien holder

takes, subject to all deeds of trust that attach to the premises prior to the commencement of the work upon the building . . .").

**25.** Absent this reading, the distinction drawn in the first sentence of § 38–109 relative to commencement of work would be pointless and the priority granted mechanics' lienors in the second sentence redundant. Moreover, in construing the D.C.Code we pay considerable deference to the pertinent recent decisions of the District of Columbia Court of Appeals, such as *Waco Scaffold & Shoring Co. v. 425 Eye St. Assocs., supra* note 24. *Cf. Lee v. Flintkote Co.,* 193 U.S.App.D.C. 121, 124 & n.14, 593 F.2d 1275, 1278 & n.14 (1979).

**26.** *Waco Scaffold & Shoring Co. v. 425 Eye St. Assocs., supra* note 24, 355 A.2d at 783. See also *Guardian Fed. Savs. & Loan Ass'n v. Suskind, supra* note 23, 265 A.2d at 297, quoted in text *supra* at note 23.

such a lien.[27] Clearly enough, then, Section 38–109 tells both construction lenders and mechanics' lienors to check the public record before committing capital, labor or materials to a construction project. The mechanic should search the record to discover what liens superior to any he may obtain are held by others.[28] The construction lender's burden is somewhat greater; he should examine the record prior to each advance to the developer.

The policy of the pertinent passages of Section 38–109 is fairly straightforward. Both construction lenders and laborers increase the value of a construction site. As has been well said, the mechanic's lien "is founded upon the just and natural consideration that a party who has enhanced the value of property by contributing thereto labor and materials shall be entitled to a preferred claim on such property to the extent of his contribution."[29] Yet, a variant of this rationale is applicable to a construction lender. His money purchases the materials and pays the workmen, thus making the improvement possible.[30] Both mechanics and construction lenders should act with advertence to the prior commitment of the other so that each can make an informed decision on the risk of not receiving the bargained-for return on his outlay of money or services.

## III

Insulation argues that interest on prior advances accruing after notice of its lien was filed should be likened to advances made after recordation of a mechanic's lien.[31] This, we think, misconceives the nature of interest in this context and would subvert the legislatively determined policy of Section 38–109.

In the first place, the priority granted by the second sentence of Section 38–109, on which Insulation's case is wholly pitched, is limited to "advance,"[32] and automatically accruing interest cannot be said to be "advanced" in any accepted sense of the word.[33] The construction lender who parcels out additional capital after notice of a mechanic's lien is filed is advertently taking a heightened risk of loss of that money; should the borrower default and the proceeds of foreclosure be insufficient to discharge both the mechanics' liens and his claim, he has only the borrower's personal liability to resort to. Insulation suggests that a construction lender who makes no additional advances should also be held to have accepted the risk that mechanics' liens would attach and take precedence over interest continuing to accrue on pre-filing advances; after all, Insulation says, the lender could have foreclosed.[34]

This proposal is unsound for a variety of reasons. It would require construction

27. See *Guardian Fed. Savs. & Loan Ass'n v. Suskind, supra* note 23, 265 A.2d at 297.

28. See Davis, *Mechanics' Liens and Construction Financing—Consistent Priorities?*, 51 Iowa L.Rev. 862, 874 (1966).

29. *Fidelity Storage Corp. v. Trussed Concrete Steel Co.*, 35 App.D.C. 1, 12–13 (1910).

30. See *Chauncey v. Dyke Bros.*, 119 F. 1, 7–8 (8th Cir. 1902); G. Osborne, Mortgages 405 (1970); IV American Law of Property 241 (Casner ed. 1952).

31. Brief for Appellee 11.

32. See text *supra* at note 22.

33. In *Waco Scaffold & Shoring Co. v. 425 Eye St. Assocs., supra* note 24, 355 A.2d at 782, 783,

the court used the word "advance" to denote the transfer of principal from the lender to the borrower. See generally, *In re Freeman*, 294 F.2d 126, 132 (3d Cir. 1961).

34. Brief for Appellee 24. In part, Insulation seems to be arguing that Royal did not foreclose as quickly as it should have. *Id.* at 14–15. The bank is not a party to this litigation and, in any event, Insulation's claim contravenes the parties' stipulations. App. 290–292.

Insulation also intimates that the trustees had an equitable duty to discharge its mechanic's lien from the foreclosure sale proceeds since Royal had made a final advance of $133,-000 to Columbia after Insulation's lien was recorded. Brief for Appellee 24–26. On the duties of trustees under a deed of trust, see *National Life Ins. Co. v. Silverman*, 147 U.S. App.D.C. 56, 72, 454 F.2d 899, 915 (1971); *Sheridan v. Perpetual Bldg. Ass'n*, 112 U.S.

lenders to inspect the public record daily for mechanics' liens on properties developed by their loans. Moreover,

> [m]ortgagees should not feel compelled to undertake the drastic remedy of foreclosure, thereby terminating the mortgagor's interest in the property, where alternative accommodations are possible. Temporarily depressed conditions in the real estate market may counsel against foreclosure; a mortgagor may have experienced temporary reverses, but the debt may remain adequately secure. The imposition of a vague duty on a mortgagee to commence foreclosure promptly after default, though beneficial to the plaintiff in this case, could work to the great detriment of mortgagors and junior lienholders generally. Under such a rule mortgagees would no doubt begin foreclosures soon after default rather than risk damage judgments for delay in commencing foreclosure proceedings. In many cases this would wipe out all junior liens along with the owner's equity of redemption. Such a drastic result should not be compelled.[35]

Even more importantly, Insulation ignores the emphasis Section 38–109 places on public recordation as the basis for setting priorities among construction lenders and mechanics.[36] Before embarking upon performance on the Columbia Plaza project,

Insulation could have examined the public record for prior mortgagees and other lienors. Had it done so, it would have discovered Royal's recorded deed of trust reciting that both principal and interest on its loan to Columbia were secured by the Columbia Plaza property.[37] Insulation thus was on notice that Royal's lien had precedence over any that Insulation might hope to acquire, and that Royal's superior claim might grow through continued accrual of interest. By omitting a simple and obvious precaution, Insulation precipitated its woes leading to this litigation.

Insulation raises the specter of large financial institutions permitting interest on construction loans to faltering projects to accumulate in order to wipe out junior mechanics' liens.[38] This, we believe, is unrealistic. Prudence dictates that the construction lender foreclose unless he thinks waiting will appreciate the value of the security—such as by allowing the developer to complete the project—for otherwise he has nothing to gain. Interest, after all, is not a windfall, but a charge representing the time-use value of money;[39] to perpetuate one loan is to forego the making of another. If an ailing loan is terminated and the security sold, the lender will be in a position to reinvest the money previously tied up and from the viewpoint of safety may well be better off for doing so.

App.D.C. 82, 83–84, 299 F.2d 463, 464–465 (en banc 1962), *later appeal*, 116 U.S.App.D.C. 205, 322 F.2d 418 (1963); *Roth v. Eisinger Mill & Lumber Co.*, 63 App.D.C. 128, 130, 70 F.2d 294, 296 (1934); *W. A. H. Church, Inc. v. Holmes*, 60 App.D.C. 27, 29–30, 46 F.2d 608, 610–611 (1931); *Anglo-American Savs. & Loan Ass'n v. Campbell*, 13 App.D.C. 581, 602–606 (1898). Insulation's assertion conflicts with the stipulations, App. 292, is otherwise unsupported by the record, and seems to rest solely on the *ipse dixit* that the trustees, under the guise of disbursing foreclosure proceeds to Royal in order to satisfy its claim to interest on pre-filing advances, were really assisting Royal to recover its last advance of principal.

**35.** *Seppala & Aho Constr. Co. v. Petersen*, 373 Mass. 316, 367 N.E.2d 613, 619–620 (1977). See also R. Kratovil, Modern Mortgage Law & Procedure 135 (1972), and cases cited therein.

**36.** See D.C.Code § 38–101 (1973); *id.* § 38–102; *id.* § 38–109, quoted in note 19 *supra*; notes 22–31 *supra* and accompanying text.

**37.** App. 329, 344. See I Glenn on Mortgages, § 90, at 542 (1943) ("[l]awful interest is part of the bargain that was struck when the loan was made; and it follows that the mortgage secures interest installments as well as principal") (footnotes omitted).

**38.** Brief for Appellee 14–15.

**39.** See, *e. g., Columbia Auto Loan, Inc. v. District of Columbia*, 78 A.2d 857, 860 (D.C.Mun. App.), *aff'd on opinion below*, 90 U.S.App.D.C. 419, 193 F.2d 34 (1951), *cert. denied*, 342 U.S. 942, 72 S.Ct. 553, 96 L.Ed. 700 (1952).

On the other hand, if Insulation's construction of Section 38–109 were adopted, a construction lender, in order to protect his investment, would be required to constantly monitor the record for notice of mechanics' liens on his security. Upon discovery of such a lien, he might be tempted to foreclose quickly in order to devote the money invested to other ventures. Fewer projects would be completed by original developers, to the detriment of lenders and mechanics alike.[40] And fewer financial institutions would be willing to make construction loans, so the building industry generally would suffer.[41]

 In summary, Section 38–109 grants a mechanic's lien priority over a construction loan secured by a deed of trust recorded prior to the commencement of work only with respect to advances made after the mechanic files a notice of intention to assert a lien. Affording a mechanic's lien priority over interest on pre-filing advances, whether accruing before or after the filing, does violence to both the letter and the policy of the statute. We hold that the trustees properly distributed the proceeds of the foreclosure sale of Columbia Plaza.

The judgment of the District Court is accordingly reversed, and the case is remanded with directions to enter judgment for appellants.

*So ordered.*

---

**40.** See text *supra* at note 35.

**41.** Insulation disputes this proposition, arguing that the "lendor may protect the interest feature of his loan the same way he protects his priority with respect to subsequent advances— by discharging prior mechanic's liens with the proceeds of the advance." Brief for Appellee 29. *Cf.* D.C.Code § 38–106 (1973); *Ritzenberg v. Noland Co.,* 124 U.S.App.D.C. 274, 364 F.2d 667 (1966). This supposed "protection" is illusory. If the priority of the lender's lien securing the developer's obligation to pay interest on advances is dependent upon satisfaction of la-

ter-recorded mechanics' liens, then of course it would be the mechanics who are receiving the true priority. Nor was Insulation in any way prejudiced by the fact that Royal made a final principal advance of $133,000 to Columbia after Insulation had filed its notice. Insulation's lien is superior to Royal's lien upon that amount, and thus would have been first satisfied from the foreclosure sale proceeds had they been large enough to accommodate it. See notes 26–27 *supra* and accompanying text.